Nos. 24-1548 and 24-1619

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

## Amazon.com Services LLC

Petitioner/
Cross-Respondent

v.

## National Labor Relations Board

Respondent/
Cross-Petitioner

---

**Petition for Review and Cross-Application for Enforcement
of a Decision and Order of the National Labor Relations Board**

---

**OPENING BRIEF OF PETITIONER/CROSS-RESPONDENT**

---

Brian Stolzenbach
Harrison C. Kuntz
SEYFARTH SHAW LLP
233 S. Wacker Drive, #8000
Chicago, Illinois 60606
Ph:     (312) 460-5000
Fax:    (312) 460-7000
bstolzenbach@seyfarth.com
hkuntz@seyfarth.com

*Counsel for Petitioner/Cross-Respondent*

◆◆

**July 15, 2024**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:   24-1548 & 24-1619

Short Caption:    Amazon.com Services LLC v. National Labor Relations Board

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

### Amazon.com Services LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

### Seyfarth Shaw LLP and Littler Mendelson P.C.

(3)    If the party or amicus is a corporation:

     i)     Identify all its parent corporations, if any; and

### Amazon.com, Inc.

     ii)     list any publicly held company that owns 10% or more of the party's or amicus' stock:

### Amazon.com, Inc.

Attorney's Signature: s/ Brian Stolzenbach          Date:  July 15, 2024

Attorney's Printed Name:  **Brian Stolzenbach**

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**

Address:          **233 S. Wacker Drive, #8000, Chicago, Illinois 60606**
Phone Number:    **(312) 460-5000**       Fax Number:  **(312) 460-7000**
E-Mail Address:   **bstolzenbach@seyfarth.com**

i

## TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................... i

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iv

JURISDICTIONAL STATEMENT .......................................................................... 1

STATEMENT OF THE ISSUES .............................................................................. 1

STATEMENT OF THE CASE .................................................................................. 2

    I.      Overview ...................................................................................... 2

    II.     The Undisputed Facts ................................................................. 3

    III.    The Board's Complaint and Decision and Order ................................ 8

    IV.   Amazon's Request to the Court ............................................................ 10

SUMMARY OF THE ARGUMENT ......................................................................... 10

ARGUMENT .............................................................................................................. 13

    I.      The Court Owes No Deference to the Board's Legal
           Conclusions ................................................................................. 13

    II.     The Act's Prohibition on Interference, Restraint, and
           Coercion Cannot Be Stretched Far Enough To Implicate the
           Disclaimer at Issue. ................................................................... 21

         A.     The appropriate inquiry focuses on actions that
                "interfere with, restrain, or coerce" employees in the
                exercise of protected rights. ........................................... 21

         B.     The Board's "no exceptions whatsoever" approach to
                the third prong of *Tri-County* arises from a misguided
                evolution of its case law. ............................................... 23

    III.    The Court Has Rejected the Board's "No Exceptions
           Whatsoever" Approach in Similar Circumstances and
           Should Do So Again Here ........................................................... 29

A.    This Court's standards adhere to the language in Section 8(a)(1) of the Act by emphasizing that discriminatory treatment is properly measured by comparison to treatment of *similar* activities, rather than *all* other activities. ............................................................. 29

B.    Current Board law under its *Register Guard* case, not applied to off duty access issues, recognizes the appropriate standard for allegations of discriminatory treatment. ................................................................. 34

C.    The appropriate standard for discriminatory treatment allegations does not support a "no exceptions whatsoever" approach to off duty access. .......... 35

IV.    Amazon Cured Any Alleged Violation of the Act. ........................... 37

V.    The NLRB's Position Raises Public Policy Issues Because Matters of No Import to the Act's Purposes Cannot Justify Its Expenditure of Scarce Agency Resources. .................................... 39

CONCLUSION .................................................................................... 41

CIRCUIT RULE 30(d) STATEMENT ........................................................ 43

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7) .......................... 43

PROOF OF SERVICE ............................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*6 West Corp. v. NLRB,*
   237 F.3d 767 (7th Cir. 2001) ................................................................ *passim*

*Allied Stores Corp.,*
   308 NLRB 184 (1992) ...................................................................................30

*Altman Camera Co. v. NLRB,*
   511 F.2d 319 (7th Cir. 1975) ......................................................................37

*Amazon.com Services LLC,*
   373 NLRB No. 40 (2024). (R. 327-32.) .....................................................1

*American Fed. of Musicians, Local 76 (Jimmy Wakely Show),*
   202 NLRB 620 (1973) ...................................................................................41

*American Steel Construction, Inc.,*
   372 NLRB No. 23 (2022) ............................................................................18

*Atlanta Opera,*
   372 NLRB No. 95 (2023) ............................................................................18

*Baptist Medical System,*
   876 F.2d 661 (8th Cir. 1989) ......................................................................33

*Boch Imports, Inc. v. NLRB,*
   826 F.3d 558 (1st Cir. 2016).......................................................................38

*Chevron U.S.A., Inc. v. NRDC, ,*
   467 U.S. 837 (1984)......................................................................................15

*Constellation Brands U.S. Operations, Inc. v. NLRB,*
   992 F.3d 642 (7th Cir. 2021) ......................................................................14

*Dallas Mailers Union, Loc. No. 143 v. NLRB,*
   445 F.2d 730 (D.C. Cir. 1971)....................................................................41

*E.I Du Pont de Nemours & Co.,*
   311 NLRB 893 (1993) ...................................................................................30

*Eaton Technologies*,
    322 NLRB 848 (1997) ......................................................................30

*FedEx Home Delivery*,
    361 NLRB 610 (2014) ......................................................................18

*Fleming Co. v. NLRB*,
    349 F.3d 968 (7th Cir. 2003), *denying enf. to* 336 NLRB 192 (2001) .............. *passim*

*Graves Trucking, Inc. v. NLRB*,
    692 F.2d 470 (7th Cir. 1982) ..........................................................37

*GTE Lenkurt, Inc.*,
    204 NLRB 921 (1973) ................................................................23, 24

*Guardian Industries Corp. v. NLRB*,
    49 F.3d 317 (7th Cir. 1995), *denying enf. to* 313 NLRB 1275 (1994) ....29, 31, 34, 36

*Hammary Mfg. Corp.*,
    265 NLRB 57 (1982) ......................................................................31

*J.W. Marriott Los Angeles at L.A. Live*,
    359 NLRB 144 (2012) ....................................................................26

*Lawson Co.*,
    267 NLRB 463 (1983) ....................................................................31

*Loper Bright Enterprises v. Raimondo*,
    144 S.Ct. 2244 (2024) .............................................................. *passim*

*Lutheran Heritage Village-Livonia*,
    343 NLRB 646 (2004) ....................................................................17

*Lytton Rancheria of California*,
    361 NLRB 1350 (2014) ..................................................................25

*Marbury v. Madison*,
    1 Cranch 137 (1803) ......................................................................14

*Mosey Mfg. Co. v. NLRB*,
    701 F.2d 610 (7th Cir. 1983) (Wood, Jr., concurring) ...........................................16

*MV Transportation, Inc.,*
  368 NLRB No. 66, slip op. (2019) (McFerran, dissenting) ...................................18

*NLRB v. IBEW Local 340,*
  481 U.S. 573 (1987) (Scalia, J., concurring in judgment)................................27, 28

*NLRB v. Intertherm, Inc.,*
  596 F.2d 267 (8th Cir. 1979) ....................................................................37

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937) .....................................................................................39

*NLRB v. Kentucky River Cmty. Care, Inc.,*
  532 U.S. 706 (2001) ................................................................................14

*NLRB v. Noel Canning,*
  573 U.S. 513 (2014) ................................................................................26

*NLRB v. Winnebago Television Corp.,*
  75 F.3d 1208 (7th Cir. 1996) ..................................................................39

*Our Way, Inc.,*
  268 NLRB 394 (1983) ............................................................................30

*Passavant Memorial Area Hospital,*
  237 NLRB 138 (1978) ......................................................................37, 38

*PCC Structurals, Inc.,*
  365 NLRB No. 160 (2017) ......................................................................18

*Piedmont Gardens,*
  360 NLRB 813 (2014) ............................................................................25

*Purple Communications,*
  361 NLRB 1050 (2014) ....................................................................17, 34

*Register Guard,*
  351 NLRB 1110 (2007) ......................................................17, 34, 35, 36

*Rio All-Suites Hotel and Casino,*
  368 NLRB No. 143 (2019) ......................................................................17

*Rock-Tenn Co. v. NLRB*,
    69 F.3d 803 (7th Cir. 1995) ....................................................................15

*Saint John's Health Center*,
    357 NLRB 2078 (2011) ...................................................................25, 26

*Sodexo Am. LLC*,
    358 NLRB 668 (2012) ......................................................................25, 26

*Southern Bakeries, LLC*,
    368 NLRB No. 59 (2019) ....................................................................25

*Southern Maryland Hospital Center*,
    916 F.2d 932 (4th Cir. 1990) ...............................................................33

*Specialty Healthcare & Rehabilitation Center of Mobile*,
    357 NLRB 934 (2011) .....................................................................17, 18

*Sprint/United Mgmt. Co.*,
    326 NLRB 397 (1998) ........................................................................30

*Stericycle, Inc.*,
    372 NLRB No. 113 (2023) ..................................................................17

*Stern Produce Co., Inc. v. NLRB*,
    97 F.4th 1 (D.C. Cir. 2024) ...........................................................10, 27

*Stoddard-Quirk Manufacturing Co.*,
    138 NLRB 615 (1962) ........................................................................30

*SuperShuttle DFW, Inc.*,
    367 NLRB No. 75 (2019) ....................................................................18

*The Boeing Co.*,
    365 NLRB No. 154 (2017) ..................................................................17

*Tri-County Med. Ctr., Inc.*,
    222 NLRB 1089 (1976) ............................................................ *passim*

*U.S. Marine Corp. v. NLRB*,
    944 F.2d 1305 (7th Cir. 1991) .............................................................15

*UNITE HERE Local 1 v. Hyatt Corp.*,
    862 F.3d 588 (7th Cir. 2017) ................................................................20

*Valley Hosp. Med. Ctr., Inc.*,
    371 NLRB No. 160 (2022) ..................................................................18

*Valley Hosp. Med. Ctr., Inc. v. NLRB*,
    100 F.4th 994 (9th Cir. 2024) (O'Scannlain, concurring) ...............19, 20

**Statutes**

5 U.S.C. § 706 ...........................................................................................14

29 U.S.C. § 157 ...................................................................................11, 21

29 U.S.C. § 160(b)......................................................................................1

29 U.S.C. § 160(e) ......................................................................................1

29 U.S.C. § 160(f) .......................................................................................1

Administrative Procedures Act ..........................................................13, 14

National Labor Relations Act ................................................... *passim*

National Labor Relations Act Section 7 ............................................ *passim*

National Labor Relations Act Section 8(a)(1), 29 U.S.C. § 158(a)(1)................ *passim*

**Other Authorities**

*Garten Trucking LC*,
    Case No. 10-CA-279843, et. al., at 49, available at
    https://www.nlrb.gov/case/10-CA-279843 (last accessed June
    21, 2024) ............................................................................................17

https://www.nlrb.gov/about-nlrb/who-we-are/the-
    board/members-of-the-nlrb-since-1935 (last accessed June 21,
    2024) ...............................................................................................16

Ronald Turner, *Ideological Voting on the National Labor Relations
    Board*, 8 U. PA. J. LAB. & EMP. L. 707, 714 (2006) .............................16, 18

Samuel Estreicher, *Policy Oscillation at the Labor Board: A Plea for Rulemaking*, 37 ADMIN. L. REV. 163 (1985) ................................................18

WILLIAM B. GOULD IV, LABORED RELATIONS: LAW, POLITICS, AND THE NLRB--A MEMOIR 15 (2000) ................................................................16

William N. Cooke & Frederick H. Gautschi III, *Political Bias in NLRB Unfair Labor Practice Decisions*, 35 INDUS. & LAB. REL. REV. 539, 549 (1982) ................................................................................................18

William N. Cooke et al., *The Determinants of NLRB Decision-Making Revisited*, 48 INDUS. & LAB. REL. REV. 237, 241 (1995)............................18

Zev J. Eigen & Sandro Garofalo, *Less Is More: A Case for Structural Reform of the National Labor Relations Board*, 98 MINN. L. REV. 1879, 1887 (2014) ...........................................................................19

## JURISDICTIONAL STATEMENT

This case involves an alleged violation of Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). Accordingly, the National Labor Relations Board ("Board" or "NLRB") possessed initial jurisdiction over the case pursuant to Section 10(b) of the Act, 29 U.S.C. § 160(b).

The Board issued its final Decision and Order in the case on March 29, 2024. *Amazon.com Services LLC*, 373 NLRB No. 40 (2024). (R. 327-32.) Amazon filed its petition for review on April 8, 2024, and the Board filed its cross-application for enforcement on April 17, 2024. The Court possesses jurisdiction over the petition for review and the cross-application for enforcement pursuant to Sections 10(e) and (f) of the Act, 29 U.S.C. §§ 160(e) and (f).

## STATEMENT OF THE ISSUES

1.  Did Amazon violate the statutory prohibition on interfering with, restraining, or coercing employees in the exercise of their right to engage in union activity or other activity protected by Section 7 of the National Labor Relations Act when it published a lawful workplace policy barring employees from entering the building or exterior working areas during their off-duty hours, solely because Amazon inadvertently, and for a mere eight days, also displayed a boilerplate sentence on one webpage hosting that policy, stating that Amazon could "depart from the policy when deemed appropriate"?

2.   Even if that one-sentence boilerplate disclaimer may have violated the Act, did Amazon nevertheless effectively cure the violation by (i) immediately removing the disclaimer once the NLRB brought it to Amazon's attention, (ii) sending employees a message directing them to the same webpage containing the policy, but without the disclaimer, and (iii) explicitly assuring them in that very same message that the policy would "not be enforced discriminatorily against employees engaging in protected activity"?

## STATEMENT OF THE CASE

### I.   Overview

Amazon's Off Duty Access Policy prohibits employees from being inside the building or in exterior working areas during their off-duty periods. (R. 327.) The Board does not argue that this is an unlawful policy based on those substantive provisions. (*Id*. at 161-211, 314-23, 327-32.) In fact, the Board has recognized the lawfulness of such a policy for roughly half a century.

Instead, the Board declared that Amazon violated Section 8(a)(1) of the National Labor Relations Act because a one-sentence disclaimer briefly and inadvertently appeared at the bottom of a webpage on Amazon's electronic AtoZ application, just one of the locations where the company hosted its Off Duty Access Policy. (*Id*. at 327-28.) The sentence read as follows: "This policy may change [from] time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate." (*Id*. at 248-50 ¶¶

2

3-12, 327-28.) This boilerplate disclaimer was displayed on the AtoZ application for eight days. (*Id*.)

The NLRB's General Counsel filed a motion for summary judgment in this case, seeking a ruling from the Board without recourse to the usual fact-finding hearing before an Administrative Law Judge. (*Id*. at 161-211.) Amazon filed an opposition to the General Counsel's motion for summary judgment along with a cross-motion for summary judgment in its favor. (*Id*. at 244-310.)

On March 29, 2024, the Board issued its Decision and Order, granting the General Counsel's motion for summary judgment, denying Amazon's cross-motion, and concluding that Amazon violated Section 8(a)(1) of the Act, owing to the brief appearance of the aforementioned disclaimer. (*Id*. at 327-32.) The Board made cursory findings of fact, simply (1) quoting the version of the policy and the disclaimer that appeared on the AtoZ application from June 30 to July 8, 2022, and (2) noting Amazon's July 8, 2022, communication to employees explaining that the disclaimer had appeared inadvertently, providing a link to the policy on AtoZ, without a disclaimer, and assuring employees that the policy would "not be enforced discriminatorily against employees engaging in protected activity." (*Id*. at 327-28.)

## II.    The Undisputed Facts

The Board's factual findings did not accept, reject, or in any other way address the additional undisputed facts included by Amazon in its cross-motion

for summary judgment. (*Compare id.* at 245-51 *with id.* at 327-28.) Amazon's additional facts provided important evidence about the process that inadvertently resulted in the disclaimer's brief appearance, Amazon's prompt actions to remove the disclaimer and assure employees of non-interference with their rights, and the limited reach of the disclaimer. (*Id.* at 245-51.)

In pertinent part, the following undisputed facts were offered by Amazon in conjunction with its cross-motion for summary judgment:

### Inside Amazon and the AtoZ Application

Inside Amazon is an intranet site available to all Amazon employees, where they can find out information regarding the company and its policies, contact help desks and internal resources, and find news and events. (R. 283 ¶ 5.)

AtoZ is an application available to all Amazon employees, providing access to off-network resources, including access to important communications and news. (*Id.* at 282-83 ¶ 4.)

### Publication of the Off Duty Access Policy

On June 30, 2022, Amazon posted the following Off Duty Access Policy on Inside Amazon:

**Policy: Off Duty Access – CAN and US**

**Purpose**

Employee safety and security is important to Amazon, and this policy describes the safe and secure access to Amazon buildings and working areas outside of buildings. This policy allows Amazon to

more easily ascertain who is present and enables Amazon to plan our support staffing, services, maintenance and related functions accordingly.

**Applicability**

This policy applies to WW Consumer Operations in the Canada and the United States. It applies in these businesses, excluding Physical Stores:

- Amazon Transportation Services (ATS).
- Global Customer Fulfillment (GCF).
- Global Delivery Services (GDS).
- Global Specialty Fulfillment (GSF).
- Customer Service (CS)

It applies to all Amazon employees working in operation sites. This includes fulltime, reduced-time, part-time, regular, flex, and seasonal employees.

**Overview**

During their off-duty periods (that is, on their days off and before and after their shifts), employees are not permitted inside the building or in working areas outside the building.

**Additional support**

If you have questions or concerns, reach out to your manager or PXT representative.

(*Id*. at 279.)

On the same day, June 30, 2022, Amazon also posted the Off Duty Access

Policy on its AtoZ application, albeit with a slightly different introductory

paragraph under the "Purpose" heading, which read: "As the safety and security

of our employees is paramount to Amazon, this policy describes the safe and

secure access to Amazon buildings and working areas outside of buildings. This

policy allows Amazon to more easily ascertain who is present and enables

Amazon to plan our support staffing, services, maintenance and related

functions accordingly." (*Id.* at 271-73.)

At the bottom of the webpage hosting the policy on AtoZ, however, the

following disclaimer also appeared in a white box:

> This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate.

(*Id.* at 273.)

In contrast, no such disclaimer appeared on the Inside Amazon webpage

hosting the policy. (*Id.* at 279-80.)

The content owner for the policy did not know the disclaimer would be

displayed on the AtoZ application because inclusion of the disclaimer language

was not part of the content approval process. (*Id.* at 304 ¶ 12.) Rather, the

disclaimer appeared on AtoZ because it was part of a master template used to

publish all policies to the AtoZ application, which caused the disclaimer to be

displayed automatically on any policy published to the application. (*Id.* at 304 ¶¶

11-12.)

On June 30, Amazon notified all employees about the new policy through an electronic message on the AtoZ application, providing a hyperlink to the full policy on AtoZ and explaining the thrust of the policy: "Under this policy, employees are not allowed to access Amazon buildings or working areas during off-duty periods." (*Id.* at 310.) In that same electronic AtoZ notification, Amazon also explicitly assured employees, in italicized font for emphasis: "**Please note this policy will not be enforced discriminatorily against employees engaging in protected activity.**" (*Id*. at 310.)

*Removal of the Disclaimer*

On July 6, 2022, just six days after the policy's publication, an attorney at the NLRB informed Amazon's counsel that a union was claiming the policy violated the Act, alleging, among other things, that the presence of the disclaimer on AtoZ created a violation of the statute. (*Id*. at 276.)

Within two days after making this discovery, Amazon had removed the disclaimer from the AtoZ master template so it no longer appeared on the Off Duty Access Policy or any other policy. (*Id*. at 304.) That same day, Amazon sent the following message through AtoZ to all employees:

> **An important note about the new Off Duty Access Policy**
>
> Fri, Jul 8, 2022
>
> We recently shared our new Off Duty Access Policy. The mobile A to Z webpage where the policy was hosted inadvertently included additional language, which has since been removed. The

substance of the policy has not changed, and you can review it
here.

Please note, this policy will not be enforced discriminatorily against
employees engaging in protected activity.

(*Id*. at 282-83 ¶ 4, 301.) This July 8, 2022, notification included a hyperlink (at the

word "here") to view the policy without the disclaimer. (*Id*.)

Also that same day, Amazon's counsel informed the NLRB that the

disclaimer had been removed and that all Amazon employees were issued a

notification of the removal with a link to the policy on AtoZ, without the

disclaimer. (*Id*. at 298.)

The webpage displaying the disclaimer on the Off Duty Access Policy

received only 200 unique visitors between posting of the policy on June 30, 2022,

and the removal of the disclaimer barely a week later. (*Id*. at 281, 304 ¶ 15.) In

other words, only about 0.00015% of Amazon's more than 1.3 million employees

could have possibly even seen the disclaimer. (*Id.* at 284 ¶ 13.)

## III.     The Board's Complaint and Decision and Order

The NLRB issued the operative complaint in this case on June 27, 2023, by

which time almost a year had already passed since Amazon removed the

disclaimer, sent employees a link to the policy without the disclaimer, and

informed the agency of both actions. (*Id*. at 162, 191-200.) As noted, the complaint

alleged only that Amazon violated the Act because of the brief, eight-day

appearance of the disclaimer. (*Id*. at 192-93.)

The Board's Decision and Order granting the General Counsel's motion for summary judgment focuses on just the final portion of the disclaimer, which stated that Amazon "reserve[d] the right to depart from the policy when deemed appropriate." (*Id.* at 328.) Specifically, the Board concluded that this phrase was inconsistent with the third prong of its three-part test for assessing the lawfulness of off duty access policies, which provides that a valid off duty access policy "applies to off-duty employees seeking access to the plant for any purpose and not just to those employees engaging in union activity." (R. 328-29, citing *Tri-County Med. Ctr., Inc.*, 222 NLRB 1089 (1976).)

The Board also rejected Amazon's contention that it effectively cured any alleged violation of the Act by its immediate removal of the disclaimer and notice to employees and Amazon's argument that the alleged violation was *de minimis* because of the disclaimer's limited viewership, short duration, and attenuated relationship to protected rights. (*Id.* at 329-30.)

At the conclusion of its Decision and Order, the Board instructed Amazon to "cease and desist from . . . [p]romulgating and maintaining an unlawful off-duty access rule which provides that Amazon reserved the right to depart from the rule when deemed appropriate," even though Amazon already did that, voluntarily, nearly two years before the Board issued the order. (*Id.* at 331.) The Board also ordered Amazon to post a notice at one of its facilities, including the following message to employees at that site: "On July 8, 2022, we advised you

that we were promulgating a revised off-duty employee access rule which removed a provision from our previous off-duty employee access rule. That provision, which provided that Amazon reserved the right to depart from the rule when deemed appropriate, was alleged to violate federal labor law. The National Labor Relations Board has now found that provision is unlawful." (*Id.* at 331-32.)

## IV.    Amazon's Request to the Court

Amazon now asks the Court to grant its petition for review, deny the Board's cross-application for enforcement, and vacate the Board's Decision and Order in its entirety.

## SUMMARY OF THE ARGUMENT

"[T]he Board's majority and its General Counsel . . . should have brushed up on the ancient and wise legal doctrine *de minimis non curat lex*—that is, the law does not concern itself with trifles. Or should not." *Stern Produce Co., Inc. v. NLRB*, 97 F.4th 1, 5 (D.C. Cir. 2024). The allegation at issue in this case could hardly be more trifling, and the Board's legal conclusions in this case have no grounding in the text of the National Labor Relations Act.

Amazon's Off Duty Access Policy is lawful on its face. No one disputes that. The policy simply prohibits employees from entering Amazon buildings or exterior Amazon work areas when they are off duty—a basic rule with which the Board takes no issue. The Board nevertheless stretched to find a violation of the

Act because a boilerplate disclaimer inadvertently appeared on one webpage hosting the Off Duty Access Policy. The disclaimer said that Amazon could "depart from the policy when deemed appropriate." (R. 327-28.)

The Board's position contravenes practical common sense and lacks fidelity to the statute it is charged to enforce. Section 8(a)(1) of the Act makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed by [Section 7 of the Act]." 29 U.S.C. § 158(a)(1). In turn, Section 7 protects the right of employees to engage in union activity or to otherwise engage in concerted activity for mutual aid and protection in the workplace. 29 U.S.C. § 157. There is no way to plausibly read the disclaimer language to suggest that Amazon could, would, or somehow did interfere with, restrain, or coerce employees in the exercise of their Section 7 rights. This is especially true, in light of the explicit, italicized assurance that Amazon provided to employees in its initial cover note disseminating the policy: "**Please note this policy will not be enforced discriminatorily against employees engaging in protected activity.**" (R. 310.) That assurance was reiterated when Amazon re-distributed the policy after removing the disclaimer. (*Id*. at 301.)

This case presents an all-too-common example of the Board losing sight of the statutory basis for its work. Instead, the Board latched onto, and misinterpreted, language from its own prior decisions to reach a legal conclusion entirely unmoored from the National Labor Relations Act. This case also presents an

11

opportunity for the Court to correct the Board's course, reminding the Board that it should police the content and application of workplace policies for actual interference with Section 7 activities, as Section 8(a)(1) requires.

The Court has previously and repeatedly rejected a similar approach by the Board in the context of other types of workplace policies. In these cases, the Board has found that almost any type of exception to an otherwise lawful ban on solicitation or distribution in the workplace automatically equates to unlawful interference with employees' Section 7 rights. In contrast, the Court has required the Board to compare like to like, determining whether the employer actually permits activities similar to Section 7 activity while prohibiting conduct protected by the Act. This is the proper method by which to ferret out unlawful interference with Section 7 activity in the maintenance and enforcement of workplace policies, and application of these principles here should result in a refusal to enforce the Board's Decision and Order.

In any event, even assuming the disclaimer was problematic, its impact was very minimal and quickly and completely remedied by Amazon on its own accord. For that reason alone, the Board should have concluded, and the Court should conclude, that Amazon did not violate the Act. In the eight-day span between publication of the policy and removal of the disclaimer, fewer than 200 Amazon employees (out of more than 1.3 million) even clicked through to the specific webpage displaying the disclaimer. In contrast, every Amazon

employee received notice of the disclaimer's removal, along with yet another reassurance that the policy would not be enforced disparately against protected activity.

On these facts, it is puzzling that the Board believes the agency, which its own leadership has recently described as "woefully underfunded, under-resourced, [and] understaffed," should have pursued this case. The agency seeks to enforce an order that essentially requires Amazon to do what it already did roughly two years ago—notify its employees that the inadvertent disclaimer has been removed.

This is not an order the Court should enforce. The Court should grant Amazon's petition for review, deny the Board's cross-application for enforcement, and vacate the Board's order in its entirety.

## ARGUMENT

### I.     The Court Owes No Deference to the Board's Legal Conclusions.

For many years, courts have afforded a significant level of deference to the Board's own legal conclusions, but this deferential approach must now change, in light of the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ("*Loper Bright*") (overruling *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984)). Instead, in accordance with the clear language of the Administrative Procedures Act (APA) and the longstanding role of the federal courts in this country's constitutional framework, the Court "'shall decide all

relevant questions of law'" and "'interpret constitutional and statutory provisions,'" without any special deference to the agency's view on such questions. *Loper Bright*, 144 S.Ct. at 2261 (quoting 5 U.S.C. § 706); *see also id.* at 2273 (observing that "legal interpretation . . . has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years") (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). Although "[c]areful attention to the judgment of the Executive Branch may help inform [the court's interpretation of a statute] . . . . courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."[1] *Loper Bright*, 144 S. Ct. at 2273.

In recent years, the Court has asked only whether the Board's legal conclusions are "reasonable," even if the Court would disagree. *See, e.g., Constellation Brands*, 992 F.3d at 646. This approach was consistent with the prevailing view at the Supreme Court, in the wake of its landmark decision in *Chevron. See, e.g., NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001) ("Two aspects of the Board's interpretation are reasonable, and hence controlling

---

[1] The Court's approach to factual matters in NLRB cases is to evaluate "whether substantial evidence supports the Board's factual findings." *Constellation Brands U.S. Operations, Inc. v. NLRB*, 992 F.3d 642, 646 (7th Cir. 2021). This is consistent with the APA and remains undisturbed by *Loper Bright*. 144 S.Ct. at 2258-61. But given the posture of this case—decided by the Board on cross-motions for summary judgment—it is the standard of review governing the Board's legal conclusions that matters here.

on this Court."), *citing Chevron*, 467 U.S. at 843. But, now, by overruling *Chevron*, the Supreme Court has released this Court to return to its proper role when reviewing the legal conclusions of an administrative agency—the same role it plays in most other contexts—engaging in *de novo* review.

This is especially appropriate in cases involving the Board. The basis for the traditional judicial deference granted to the Board (and to other agencies, under *Chevron*) was the notion that the agency is exercising special technical expertise—in the Board's case, expertise in labor relations: "Deferential to the NLRB's expertise, we uphold the NLRB's conclusions of law unless 'they are irrational or inconsistent with the Act.'" *Rock-Tenn Co. v. NLRB*, 69 F.3d 803, 807 (7th Cir. 1995) (*quoting U.S. Marine Corp. v. NLRB*, 944 F.2d 1305, 1314 (7th Cir. 1991) (internal quotations omitted). But, as the Supreme Court noted in *Loper Bright*, statutory interpretation is well within the expertise of the federal judiciary. *Loper Bright*, 144 S.Ct. at 2257. To the extent technical understanding is helpful, or even necessary, to the proper interpretation of a statute, an agency's opinion is merely one type of information the courts must consider in reaching their own independent legal conclusion about the meaning of the law. *See id.* at 24-25 (noting that courts are perfectly capable of incorporating "technical detail" into their "diet" and that parties and *amici* are perfectly capable of educating judges on these issues).

Moreover, it is increasingly evident that the Board behaves less as a neutral dispenser of specialized labor relations expertise, and more as a politically motivated body whose legal conclusions swing wildly back and forth, based on the political party to which a majority of its appointed Members belongs. Even before *Loper Bright*, this approach by the agency called into question the appropriateness of any level of judicial deference being granted to the Board's legal conclusions. *See, e.g., Mosey Mfg. Co. v. NLRB*, 701 F.2d 610, 616 (7th Cir. 1983) (Wood, Jr., concurring) ("'On-again, off-again' is apparently on-again. Against that confusing background of delay traceable to the bureaucratic oscillation of the Board I would . . . deny enforcement relying on the precedent of practical common sense.").

The Board currently consists of four Members (three Democrats and one Republican), with one seat sitting vacant. By tradition, the President, with the advice and consent of the Senate, appoints three Members from the President's own political party and two from the opposing party or, on rare occasion, an independent. *See* https://www.nlrb.gov/about-nlrb/who-we-are/the-board/members-of-the-nlrb-since-1935 (last accessed June 21, 2024) (listing each Board Member's political party affiliation); WILLIAM B. GOULD IV, LABORED RELATIONS: LAW, POLITICS, AND THE NLRB--A MEMOIR 15 (2000); Ronald Turner, *Ideological Voting on the National Labor Relations Board*, 8 U. PA. J. LAB. & EMP. L. 707, 714 (2006).

16

The Board's Members routinely decide cases on various issues with readily apparent adherence to their political affiliations. The Board's politically based pendulum swings have left all aspects of the public facing a lack of stability and predictability in the law, on many important workplace issues. To identify just a few of the Board's oscillating standards:

- **Work Rules**: *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004) (adopting standard based on whether an employee could reasonably construe a rule to interfere with their rights under the Act); *The Boeing Co.*, 365 NLRB No. 154 (2017) (overturning *Lutheran Heritage* in favor of a balancing test); *Stericycle, Inc.*, 372 NLRB No. 113 (2023) (overturning *Boeing* in favor of a more stringent version of *Lutheran Heritage*).[2]

- **Employee Use of Employer-Owned Email Systems**: *Register Guard,* 351 NLRB 1110 (2007) (finding employees have no statutory right to use their employers' email systems for protected activities); *Purple Communications*, 361 NLRB 1050 (2014) (overruling *Register Guard* and finding employees possess such a right to use employer-owned email systems); *Rio All-Suites Hotel and Casino*, 368 NLRB No. 143 (2019) (overturning *Register Guard* and finding no such right exists).[3]

- **Bargaining Unit Scope**: *Specialty Healthcare & Rehabilitation Center of Mobile*, 357 NLRB 934 (2011) (requiring the presence of an "overwhelming" community of interest in order for a petitioned-for

---

[2] *Lutheran Heritage*: two Republicans and one Democrat, all in the majority. *Boeing:* three-Republican majority; two Democrats dissenting. *Stericycle:* three-Democrat majority; one Republican dissenting.

[3] *Register Guard*: three-Republican majority; two Democrats dissenting. *Purple Communications:* three-Democrat majority; two Republicans dissenting. *Rio:* three-Republican majority; one Democrat dissenting. In addition, the current NLRB General Counsel (a Democratic Party appointee) has argued in a pending case that the Board should now overrule *Rio All-Suites* and return to *Purple Communications*. *See* General Counsel's Brief in Support of Exceptions, *Garten Trucking LC*, Case No. 10-CA-279843, et. al., at 49, available at https://www.nlrb.gov/case/10-CA-279843 (last accessed June 21, 2024).

bargaining unit to be expanded); *PCC Structurals, Inc.*, 365 NLRB No. 160 (2017) (overturning *Specialty Healthcare* and finding that a community of interest need not be "overwhelming" in order to expand a unit); *American Steel Construction, Inc.*, 372 NLRB No. 23 (2022) (overturning *PCC Structurals* and returning to the *Specialty Healthcare* "overwhelming" standard).[4]

- **Independent Contractor Status**: *FedEx Home Delivery*, 361 NLRB 610 (2014) (determining independent contractor status based on common law factors weighed equally); *SuperShuttle DFW, Inc.*, 367 NLRB No. 75 (2019) (overruling *FedEx* and finding that entrepreneurial opportunity for gain or loss is the "animating principle" of the common law test); *Atlanta Opera*, 372 NLRB No. 95 (2023) (overruling *SuperShuttle* and returning to the *FedEx* standard that excludes additional emphasis on entrepreneurial opportunities).[5]

Even the Board's own Members have acknowledged the significant flip-

flopping in the Board's decisions. "In some areas of labor-law doctrine, to be

sure, the Board's 'policy oscillation' has been notable." *MV Transportation, Inc.*,

368 NLRB No. 66, slip op. at 37 (2019) (McFerran, dissenting) (*quoting* Samuel

Estreicher, *Policy Oscillation at the Labor Board: A Plea for Rulemaking*, 37 ADMIN. L.

REV. 163 (1985));[6] *see also Valley Hosp. Med. Ctr., Inc.*, 371 NLRB No. 160, slip op. at

---

[4] *Specialty Healthcare*: three-Democrat majority; one Republican dissenting. *PCC Structurals:* three-Republican majority; two Democrats dissenting. *American Steel:* three-Democrat majority; two Republicans dissenting.

[5] *FedEx*: three-Democrat majority; one Republican dissenting. *SuperShuttle*: three-Republican majority; one Democrat dissenting. *Atlanta Opera*: three-Democrat majority; one Republican dissenting.

[6] In addition to Estreicher, other academic observers often have remarked on the Board's policy oscillations based on political developments. *See, e.g.,* William N. Cooke et al., *The Determinants of NLRB Decision-Making Revisited*, 48 INDUS. & LAB. REL. REV. 237, 241 (1995); William N. Cooke & Frederick H. Gautschi III, *Political Bias in NLRB Unfair Labor Practice Decisions*, 35 INDUS. & LAB. REL. REV. 539, 549 (1982); Turner, *supra*, 8 U.

*23 (2022) (Board majority noting that "today's decision [regarding whether an employer may discontinue union dues checkoff following expiration of a collective bargaining agreement] represents a change in Board policy that has oscillated repeatedly in recent years.").

In response to this "troubling trend," one Ninth Circuit jurist recently criticized the Board as an agency that "frequently changes its mind, seesawing back and forth between statutory interpretations depending on its political composition, leaving workers, employers, and unions in the lurch." *Valley Hosp. Med. Ctr., Inc. v. NLRB*, 100 F.4th 994, 1003 (9th Cir. 2024) (O'Scannlain, concurring) (*citing* Zev J. Eigen & Sandro Garofalo, *Less Is More: A Case for Structural Reform of the National Labor Relations Board*, 98 MINN. L. REV. 1879, 1887 (2014) ("[N]ewly constituted Boards have made a practice of overruling precedent created by past administrations' Boards, with each Board instituting its own set of politically-motivated rules.")). Judge O'Scannlain aptly described the Board as an agency that "veers violently left and right, a windsock in political gusts." *Valley Hosp.*, 100 F.4th at 1004. With reference to oral arguments before the Supreme Court in *Loper Bright*, Judge O'Scannlain concluded that deference to such politically motivated changes in legal standards is "precisely what our

---

PA. J. LAB. & EMP. L. at 717-51 (describing 13 areas in which Board standards have been modified at least once as a result of changes in the Board's political composition).

deference doctrines allow" and that "[p]erhaps the time has come to reevaluate those doctrines." *Id.*

So it had, and so the Supreme Court has now done. Accordingly, the Board's legal conclusions now carry whatever persuasive force the agency's explanation may have upon the Court. (As discussed below, the Board's explanation for its legal conclusion in this case is almost non-existent and far from persuasive.) In many respects, this is similar to the approach the Court would apply to the opinion of another Circuit. *See UNITE HERE Local 1 v. Hyatt Corp.*, 862 F.3d 588, 604 (7th Cir. 2017) (observing that other Circuits' decisions are "persuasive but not binding authority"). Indeed, there is no reason why a Court of Appeals should give administrative agencies any more deference in their legal interpretations than it affords to its sister Circuits. This is particularly true when, as with the NLRB, all pretensions to decision-making based on specialized expertise have been eroded by the vicissitudes of political partisanship.

In short, the Court owes the Board's decision in this case no deference. It should review the Board's legal conclusions, which form the entire basis for its decision, *de novo*.

II.    **The Act's Prohibition on Interference, Restraint, and Coercion Cannot Be Stretched Far Enough To Implicate the Disclaimer at Issue.**

A.    **The appropriate inquiry focuses on actions that "interfere with, restrain, or coerce" employees in the exercise of protected rights.**

Regardless of the standard of review, the Board misinterpreted the Act in this case. Its decision is not even based on a reasonable construction of the statute, much less a correct one, so its order should not be enforced. The operative statutory provision is very simple and straightforward:

> It shall be an unfair labor practice for an employer . . .  to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [29 U.S.C. § 157].

29 U.S.C. § 158(a)(1). The disclaimer language that briefly appeared on one webpage hosting the Off Duty Access Policy provides no basis for a finding that Amazon interfered with, restrained, or coerced any employee in the exercise of rights protected by the Act. In fact, neither the policy nor the disclaimer mentions Section 7 activities at all. Instead, the Board finds a violation of the Act by misinterpreting its own prior precedent in a way that strays far afield from any semblance of fidelity to the relevant statutory language.

The Board did not find any evidence that the disclaimer was used by Amazon to make an exception to its Off Duty Access Policy, much less that it used the disclaimer to discriminate against protected activities. (*See generally* R. 327-32.) Instead, the Board relied on the mere existence of the disclaimer to find that it was unlawful. (R. 328.) All this, in the absence of any evidence demonstrating

even a single employee read the disclaimer. In fact, the record reflects that only 200 (out of 1.3 million) employees even *could have* read it because that is the total number of individuals who visited the webpage in question during the days when the disclaimer appeared.

Even if the Court steps into the shoes of a hypothetical employee who actually read the policy and then read the disclaimer, the Court may rightly ask itself: How is it possible that reading a brief phrase reserving Amazon's right to depart from the policy could have interfered with, restrained, or coerced the reader in the exercise of any Section 7 rights? Put another way: What is the Section 7 activity the reader otherwise would have engaged in, but for the presence of this milquetoast disclaimer?

To be sure, the substantive language of the actual policy does prevent employees from engaging in union activities inside the building, or in exterior working areas while they are off duty. The Board, however, does not claim the policy is unlawful for this reason; in fact, everyone understands that an employer may bar employees from the inside of the building and its outdoor working areas whenever they are off duty, without violating the Act. *See Tri-County Med. Ctr., Inc.*, 222 NLRB 1089, 1089 (1976).

Instead, the Board contends that the appearance of the disclaimer on the policy, by "reserv[ing] the right to depart from the policy when deemed appropriate," essentially granted Amazon "discretion to decide when and why

off-duty employees may access its facilities," which, in turn violated the Act. (R. 327-28.) The Board is wrong. This reservation of rights did not violate the Act because it did nothing to interfere with Section 7 rights. Indeed, the Board never explains how a mere statement of such discretion could interfere with, restrain, or coerce anyone in the exercise of protected activities. Indeed, the Board never references the language of statute at all. The Board therefore has failed to articulate any cognizable interpretation of the Act that could result in a violation based on Amazon having retained discretion to make exceptions to its policy.

**B.    The Board's "no exceptions whatsoever" approach to the third prong of *Tri-County* arises from a misguided evolution of its case law.**

Ignoring the statute altogether, the Board references its long-ago decision in *Tri-County* and, more to the point, relies on a series of not-so-long-ago Board decisions misinterpreting *Tri-County*. (R. 328-29.) According to the Board, those recent decisions support its conclusion that the disclaimer language, standing alone, meant that Amazon's policy did not "satisfy prong three of the *Tri-County* test." (R. 328.) But "prong three of the *Tri-County* test" is not the National Labor Relations Act, and the manner in which the Board has interpreted *Tri-County* finds no support in the underlying statutory language.

To fully understand the misguidedness of the Board's approach, it is useful to trace the evolution of the Board's case law on this issue. More than fifty years ago, in *GTE Lenkurt, Inc.*, 204 NLRB 921, 921 (1973), the Board considered the

following workplace rule: "An employee is not to enter the plant or remain on the premises unless he is on duty or scheduled to work." The Administrative Law Judge (ALJ) in that case concluded that the rule was unlawful because, in the ALJ's view, an employer should not be allowed to prohibit employees from remaining on or returning to "the premises" to solicit union support to distribute union literature during their off duty periods. *Id.* The Board, however, disagreed. It concluded that off duty employees have no right to remain on or return to the premises, reversing the ALJ and concluding that the rule was permissible. *Id.* at 921-22.

Three years later, in *Tri-County*, the Board changed its collective mind about a narrow aspect of the *GTE Lenkurt* opinion. The *Tri-County* Board addressed a hospital employer that actually stopped an off duty employee "from distributing union literature outside the hospital," even though the employer had no written rule in place prohibiting such conduct. 222 NLRB at 1089-90. Partially overruling *GTE Lenkurt*, the Board decided that an employer may prohibit employees from being inside the building or in exterior work areas during their off duty time, but the employer may not bar them from exterior non-working spaces. *Id.*

Establishing a new legal principle governing off duty access, the *Tri-County* Board declared that an off duty access rule is "valid only if it (1) limits access solely with respect to the interior of the plant and other working areas; (2) is clearly disseminated to all employees; and (3) applies to off-duty employees

seeking access to the plant for any purpose and not just to those employees engaging in union activity." *Id.* Reading the third prong in its entirety and in context, the *Tri-County* Board did not require employers to write off duty access rules that explicitly bar all off duty employees from the building for any purpose whatsoever, with no conceivable exceptions allowed. Rather, the fundamental requirement is just that the rule must be applied in a non-discriminatory fashion—i.e., "not just to those employees engaging in union activity."

Even the Board has previously acknowledged that *Tri-County* does not actually require a "no exceptions whatsoever" approach and that a lawful off duty access rule may allow for some exceptions. *See Sodexo Am. LLC,* 358 NLRB 668, 669 (2012) (allowing exception for employees seeking treatment as patients because "we decline as a matter of policy to require that health care employers limit their employees' access to medical care in order to comply with the Tri-County requirements").

In recent years, however, the Board has often concluded that the presence of any exceptions to a general prohibition on off duty access automatically violates the Act simply because, according to the Board, this violates the third prong of *Tri-County*. (R. 328-29, *citing Piedmont Gardens*, 360 NLRB 813, 813 (2014); *Southern Bakeries, LLC*, 368 NLRB No. 59, slip op. at 1-2 (2019); *Lytton Rancheria of California*, 361 NLRB 1350, 1353 (2014); *Saint John's Health Center*, 357 NLRB 2078, 2082 (2011).

Even so, the Board has often been divided on this point. *See Sodexo*, 358 NLRB at 670-71 (Hayes, dissenting) (criticizing majority's conclusion that a hospital's off duty access rule violated the Act, based on exceptions for "hospital-related business," such as "picking up paychecks, completing employment-related paperwork or filling out patient information"); *J.W. Marriott Los Angeles at L.A. Live*, 359 NLRB 144, 148 (2012)[7] (Hayes, dissenting) (criticizing majority's conclusion that an off duty access policy was invalid because it stated that management may occasionally permit off duty access, reasoning that some exceptions must be permitted because, "For example, what if an employee forgets her medication at the workplace and faces a medical emergency if she cannot retrieve it?"); *Saint John's*, 357 NLRB at 2087-88 (Hayes, dissenting) (criticizing majority's conclusion that a hospital's off duty access policy violated the third prong of the *Tri-County* test because it permitted access for retirement parties and baby showers).

Now, in supposed reliance upon these prior cases, rather than the actual holding of *Tri-County* or, more to the point, the actual language of the National Labor Relations Act, the Board takes it a step further. It finds a violation of the Act based on an inadvertently placed disclaimer, which existed for a mere eight

---

[7] *J.W. Marriott*, it should be noted, is not valid Board precedent because it was issued by a Board panel that included an improperly appointed Member. *See NLRB v. Noel Canning*, 573 U.S. 513 (2014).

days, simply "reserving the right" to potentially depart from the policy if

circumstances warrant it. The evolutionary process that brought the Board to this

point evokes the words of Justice Scalia, recently quoted by the D.C. Circuit

while rebuking the Board for wandering astray from the language of the Act:

> The seductive plausibility of single steps in a chain of evolutionary development of a legal rule is often not perceived until a third, fourth, or fifth logical extension occurs. Each step, when taken, appeared a reasonable step in relation to that which preceded it, although the aggregate or end result is one that would never have been seriously considered in the first instance. This kind of gestative propensity calls for the line drawing familiar in the judicial, as in the legislative process: thus far but not beyond.

*Stern Produce*, 97 F.4th at 11 (*quoting NLRB v. IBEW Local 340*, 481 U.S. 573, 598

(1987) (Scalia, J., concurring in judgment) (internal quotations omitted).

In *Stern Produce*, the D.C. Circuit declined to enforce the Board's order, which

found a Section 8(a)(1) violation, because the Board "strayed from its statutory

mandate." 97 F.4th at 12. The court described "[t]he Board's misguided attempt

to find a labor-law violation" as an evolutionary process in which it first took an

expansive view of the scope of the Act and then "'presse[d] the rationale of that

expansion to the limits of its logic.'" *Id.* at 12-13 (*quoting IBEW Local 340*, 481 U.S.

at 597).

A similar evolution in the case law addressing off duty access rules has taken

the Board far afield from the straightforward statutory prohibition on

interference, restraint, or coercion in the exercise of Section 7 rights. In Justice

Scalia's words, "the aggregate or end result is one that would never have been

seriously considered in the first instance." *IBEW Local 340*, 481 U.S. at 598. As he also suggested, these developments call for the type of "line drawing" that is well within the province of the courts. *Id.*

The Board's opinion in this case did not make a comparison between the prohibition in Section 8(a)(1) and the language in the disclaimer and thus never explained how the mere existence of the disclaimer for barely a week's time could have interfered with, restrained, or coerced employees in the exercise of their Section 7 rights. Nor could it have explained this, in light of Amazon's explicit, repeated assurances to its employees that its Off Duty Access Policy would not be disparately enforced against protected activities. (R. 301, 310.)

There is no basis for a leap from one phrase reserving for the employer some "discretion" to potentially depart from the strict terms of a policy in a situation that warrants it, to a finding of "interference, restraint, or coercion" in the exercise of employees' statutory rights. Nor did the Board even attempt to explain how it could make that leap. This Court should, as it has in other cases, require the Board to apply a far more faithful approach to the statutory language.

**III.    The Court Has Rejected the Board's "No Exceptions Whatsoever" Approach in Similar Circumstances and Should Do So Again Here.**

**A.    This Court's standards adhere to the language in Section 8(a)(1) of the Act by emphasizing that discriminatory treatment is properly measured by comparison to treatment of *similar* activities, rather than *all* other activities.**

This Court applies a more direct approach to Section 8(a)(1) allegations than that utilized by the Board in this case. For example, in *6 West Corp. v. NLRB*, 237 F.3d 767, 778-82 (7th Cir. 2001), the Court vacated four Section 8(a)(1) violation findings, all because the Board had not demonstrated interference, restraint, or coercion: (1) the addition of a security guard during an organizing campaign; (2) application of a solicitation policy that permitted solicitation for items such as Girl Scout cookies, but did not permit employees to speak with customers about the union campaign; (3) expression of a belief that the union was responsible for a bomb threat; and (4) a manager's statement that he would look into concerns about a Christmas tip issue. *Id.*  The same result is warranted here, as there is no legal basis for the Board's conclusion that the disclaimer violated anyone's statutory rights.

The Board and this Court have previously disagreed, on multiple occasions, about what kinds of exceptions to workplace prohibitions on solicitation and distribution, or on bulletin board postings, create a violation of the Act based on disparate treatment of Section 7 activities. *See, e.g.*, *Guardian Industries Corp. v. NLRB*, 49 F.3d 317 (7th Cir. 1995), *denying enf. to* 313 NLRB 1275 (1994); *Fleming*

*Co. v. NLRB*, 349 F.3d 968 (7th Cir. 2003), *denying enf. to* 336 NLRB 192 (2001); *6 West Corp. v. NLRB*, 237 F.3d 767, *denying enf. to* 330 NLRB 527 (2000). The Court's logic in those cases should also be applied here, to reject the Board's order.

As a general rule, the Board holds that employers may prohibit solicitation in the workplace during working time and distribution in the workplace during working time or in working areas, even though such policies necessarily prohibit solicitation and distribution that otherwise would be protected by Section 7 of the Act. *Our Way, Inc.*, 268 NLRB 394, 394 (1983); *Stoddard-Quirk Manufacturing Co.*, 138 NLRB 615 (1962). It also holds that employers may control the types of postings employees are allowed to place on employer bulletin boards, even though this may mean that employees are not allowed to post messages otherwise protected by Section 7. *Eaton Technologies*, 322 NLRB 848, 853 (1997). These rules are similar to the Board's acknowledgement that an employer may prohibit employees from accessing the building and exterior work areas during their off duty periods, even though this necessarily prohibits them from engaging in Section 7 activities in those areas while off duty.

The Board also requires employers to enforce their prohibitions on solicitation and distribution, and on bulletin board postings, in a non-discriminatory way, by treating Section 7 activities no worse than analogous activities which are not protected by Section 7. *See Sprint/United Mgmt. Co.*, 326 NLRB 397 (1998); *E.I Du Pont de Nemours & Co.*, 311 NLRB 893 (1993); *Allied Stores Corp.*, 308 NLRB 184

(1992); *Lawson Co.*, 267 NLRB 463 (1983); *Hammary Mfg. Corp.*, 265 NLRB 57 (1982). In these circumstances, however, when the Board has adopted a "no exceptions whatsoever" approach to the concept of non-discrimination, it has drawn rebuke from the Court. *See Fleming*, 349 F.3d at 972; *6 West*, 237 F.3d at 779-80; *Guardian*, 49 F.3d at 321-22. Similarly, the Board's apparent "no exceptions whatsoever" approach to off duty access rules should also be rejected by the Court.

In *Guardian*, the Court found no unlawful discriminatory treatment where the employer permitted employees to post personal "swap and shop" solicitations on its bulletin board, but did not permit "organizational" postings on behalf of outside entities. 49 F.3d at 321-22. It specifically criticized the Board's suggestion that discriminatory treatment was demonstrated by the employer's decision to permit a posting where one employee "offer[ed] a fellow employee the opportunity to buy a newly born puppy," while also prohibiting union announcements. 49 F.3d at 319. The court explained:

> Discrimination is a form of inequality, which poses the question: "equal with respect to what?" A person making a claim of discrimination must identify another case that has been treated differently and explain why that case is "the same" in the respects the law deems relevant or permissible as grounds of action.

*Id.*

In *Fleming*, the employer removed union fliers from the bulletin board in the break room, citing its pre-existing policy restricting postings to company use and

prohibiting employees from posting any personal announcements. 349 F.3d at
974. In reality, notwithstanding this written policy, the employer had a "practice
of permitting employees to post personal items—notices of weddings or births—
on the bulletin boards. *Id.* At the same time, however, the employer had never
permitted any "organizational" notices, "'expressing ideas and designed to
induce action by employees as a group, such as an investment club, travel club,
sports club, religious club, political club, or any similar club or committee.'" *Id.*
(quoting the ALJ decision in the case). The Court denied enforcement to the
Board's order in the case, finding no discriminatory treatment based on the
removal of union postings, merely because the employer permitted personal
postings, concluding that the two categories were not of similar kind. *Id.* at 975.

In *6 West*, the Board found a violation of the Act because the restaurant
employer disciplined employees for violating its rule against solicitation by
soliciting in the restaurant for union support. 237 F.3d at 776. The Board relied on
the fact that the employer had previously allowed other kinds of solicitation,
such as the selling of Girl Scout cookies, Christmas decorations, and hand-
painted bottles. *Id.*  The Court declined to enforce the Board's order, explaining
that the employer would have:

> violated the NLRA if it discriminated by punishing the three
> employees for soliciting union support but allowing other, *similar*
> solicitations by other employees. We are of the opinion that
> solicitations for girl scout cookies, Christmas ornaments, hand-
> painted bottles . . .  certainly cannot, under any circumstances, be

> compared to union solicitation as support for the [] determination
> that the restaurant engaged in a discriminatory application of its
> non-solicitation policy. We are at a loss to comprehend how a
> restaurant could maintain positive relations with its employees and
> customers if it failed to allow an activity as innocent as the sale of
> girl scout cookies or the sale of hand-blown Christmas ornaments
> during the yuletide season.

*Id.* at 780 (emphasis in original). The Court noted, in contrast, that the employer

would have violated the Act if it had previously "allowed employees to solicit

business, political, religious, or other association membership." *Id.* at 780 n.18.

The Court's longstanding approach to the concept of discriminatory

enforcement of workplace rules is directly contrary to the Board's implicit

suggestion in this case that non-discrimination with respect to interior access for

off duty employees must equate to a prohibition of access for literally "all

purposes."[8] That stretches the concept of non-discrimination far beyond what is

prohibited by the Act.

---

[8] Other Courts of Appeals have also rejected Board attempts to conflate non-discrimination with a "no exceptions" approach. *See, e.g., Southern Maryland Hospital Center*, 916 F.2d 932, 937 (4th Cir. 1990) (rejecting Board's argument that discrimination resulted from a hospital allowing employees' friends and families to access the cafeteria, but not union organizers present for solicitation purposes); *Baptist Medical System*, 876 F.2d 661, 664 (8th Cir. 1989) (finding no discrimination based on union organizers' ejection from hospital cafeteria where it was "clear that the organizers were using the cafeteria solely for purposes of promoting the union and not at all to patronize the cafeteria.").

**B.**     **Current Board law under its *Register Guard* case, not applied to off duty access issues, recognizes the appropriate standard for allegations of discriminatory treatment.**

In fact, when it comes to employee use of employer email systems, even the Board has adhered to the Court's standard for assessing discriminatory enforcement of workplace policies, *see Register Guard*, 351 NLRB 1110, 1117-19 (2007), and it makes no sense that off duty access policies should be assessed any differently. Section 8(a)(1) of the Act does not contain different language relevant to different types of policies.

In *Register Guard*, drawing heavily on this Court's *Guardian* and *Fleming* opinions, the Board defined impermissible "discrimination" as drawing distinctions "along Section 7 lines."[9] *Id*. at 1117-19. In that case, the Board examined an employer's practices with regard to employee email usage, explaining that distinctions between different types of activities are lawful, so long as those distinctions are unrelated to protected activities. *Id*. For example,

> an employer may draw a line between charitable solicitations and noncharitable solicitations, between solicitations of a personal nature (e.g., a car for sale) and solicitations for the commercial sale of a product (e.g., Avon products), between invitations for an organization and invitations of a personal nature, between solicitations and mere talk, and between business-related use and nonbusiness-related use.

---

[9] As noted above, in *Purple Communications,* 361 NLRB 1050, the Board overturned *Register Guard*'s holdings regarding the right of employees to use employer-owned email systems, but *Register Guard*'s approach to the standard for assessing discrimination in violation of the Act remains undisturbed, as the *Purple Communications* Board explicitly acknowledged. *Id*. at 1054 n.13.

*Id.* at 1118.

Under the standard repeatedly used by the Court and even adopted by the Board in *Register Guard* with respect to one type of workplace rule, the Board should not have found Amazon's disclaimer language unlawful, merely because it theoretically allowed for some future exception to the Off Duty Access Policy. The disclaimer drew no distinctions "along Section 7 lines," as it made no reference to union activity or other protected activities at all. (R. 328.) In fact, the disclaimer drew no distinctions whatsoever, but merely stated that there theoretically could be a situation in which Amazon would decline to strictly enforce the policy. Moreover, there is no evidence in the record whatsoever that Amazon enforced the policy in any discriminatory manner.

### C. The appropriate standard for discriminatory treatment allegations does not support a "no exceptions whatsoever" approach to off duty access.

The Court's general view on this concept and the Board's view in *Register Guard* should be applied to off duty access rules because this is the only way the *Tri-County* test makes any sense, as a practical matter. It is evident that the Board's approach in this case would render the *Tri-County* test essentially pointless because it would render practically any off duty access rule unlawful— if not on its face, then in its application. As former Board Member Hayes pointed out in his dissents, there are many safety, security, and other business reasons for employers to generally prohibit unfettered access to their buildings by off duty

employees, but there are also similar reasons why an employer may need to make limited exceptions to such a policy. Applying the Board's approach in this case would require employers to either allow all manner of access to its buildings by off duty employees or, for example, to tell an employee who forgets his wallet or keys or medication in his locker that he is just out of luck. Or to tell an employee who needs to come back to work to complete paperwork for a leave of absence that it simply cannot be done. Surely, an employer may allow employees inside the building for a brief period, in certain limited circumstances, while otherwise prohibiting general unfettered off duty access, without violating the Act. Even more so, an employer cannot violate the Act by merely suggesting that there could be a situation in which it decides to "depart from" its policy of prohibiting off duty access.

Interpreting the third prong of *Tri-County* to prohibit any and all ability for an employer to make exceptions to off duty access prohibitions is not reasonable, is not practicable, and does not fulfill the purposes of the Act. Such an interpretation is not consistent with governing Board and court case law explaining that unlawful anti-union discrimination in the application of workplace policies means only drawing distinctions between "similar" activities. *6 West*, 237 F.3d at 780; *see also Guardian*, 49 F.3d at 319; *Fleming*, 349 F.3d at 372; *Register Guard*, 351 NLRB at 1117-19. Because the Board's order is ultimately

grounded in logic contrary to these established principles, and therefore contrary to the Act, the Court should deny enforcement to the Board's order.

## IV.     Amazon Cured Any Alleged Violation of the Act.

Setting everything else aside, Amazon's prompt and specific communication to employees about deletion of the disclaimer, only eight days after its appearance, cured any alleged violation of Section 8(a)(1). The Board rejected Amazon's contention in this regard under *Passavant Memorial Area Hospital*, 237 NLRB 138 (1978), a Board case this Court has never examined. This Court has, however, implicitly recognized that a repudiation of otherwise purportedly unlawful conduct can provide a defense to that allegation. *See Altman Camera Co. v. NLRB*, 511 F.2d 319, 321 (7th Cir. 1975) (finding that "[s]ince there was no specific repudiation by the Company of these supervisors' conduct, it was responsible for these acts of its agents") (citations omitted); *Graves Trucking, Inc. v. NLRB*, 692 F.2d 470, 474 (7th Cir. 1982) (same) (*citing Altman Camera*, 511 F.2d at 321).

Moreover, other courts have recognized that an employer may cure a violation through prompt action such as Amazon's approach here. *See, e.g., NLRB v. Intertherm, Inc.*, 596 F.2d 267, 276 (8th Cir. 1979) (finding no Section 8(a)(1) violation for otherwise unlawful polling of employees because "management took prompt and effective steps to remedy this violation which, in our opinion, make superfluous and counterproductive the Board's cease and desist order and

its requirement that the Company post a Board notice"); *Boch Imports, Inc. v. NLRB*, 826 F.3d 558, 578 (1st Cir. 2016) (Stahl, concurring) (finding no violation for overbroad policies after revision of those policies and explaining that a "hyper-technical" approach to the Board's *Passavant* standard "squander[s]" "[t]he resources of the Board and the business alike" and that "[t]axpayer funds are likewise misspent when the Board fails to advise a cooperating employer that litigation can be avoided through repudiation").

In this case, even assuming the unintended presence of disclaimer language for eight days in one electronic location was arguably inconsistent with the third prong of *Tri-County* and the Act, the allegedly unlawful conduct was effectively cured immediately after the NLRB brought it to Amazon's attention, more than a year before the NLRB issued a complaint in this case. (R. at 301.) The repudiation of the disclaimer on the AtoZ version of the policy was, put in terms of the Board's *Passavant* standard, timely, unambiguous, and free from other coercive conduct. 237 NLRB at 138. The timely nature of Amazon's actions is demonstrated by the fact that the disclaimer remained posted for only eight days and was removed only two days after Amazon learned of its presence. (R. at 301, 304 ¶ 13.) The repudiation was also specific in nature to the inadvertent inclusion of the disclaimer and provided express assurance that the policy would not be enforced discriminatorily against employees engaged in protected activities. Notably, the communication explicitly informed employees that the "policy will

not be enforced discriminatorily against employees engaging in protected activity." (*Id.* at 301.)

The communication was also specific to the inadvertently included disclaimer because it informed employees that inadvertently included language had been removed from the Off Duty Access Policy and invited employees to review the policy without that language by clicking on a hyperlink provided in blue text. Once clicked, the hyperlink would take an employee to the policy without the disclaimer. (*Id.* at 301, 304 ¶ 13.)

As a result, even incorrectly assuming the disclaimer could implicate Section 8(a)(1) of the Act, the Court should find that Amazon effectively cured any statutory issues through its prompt repudiation and rescission of the disclaimer.

## V.    The NLRB's Position Raises Public Policy Issues Because Matters of No Import to the Act's Purposes Cannot Justify Its Expenditure of Scarce Agency Resources.

As a governmental agency, it is appropriate for the Board's actions to be evaluated in light of public policy considerations. *See, e.g., NLRB v. Winnebago Television Corp.*, 75 F.3d 1208, 1214 (7th Cir. 1996) (considering public policy in evaluating Board's approach to the supervisory definition under Section 2(11) of the Act). Indeed, the Supreme Court's initial finding of the Act's validity rested largely upon public policy considerations about organizational rights and industrial stability. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33–34 (1937).

In the circumstances presented here, the NLRB's purportedly strained resources cannot justify its pursuit of this matter. To wit, the number of unfair labor practice charges filed with the NLRB during Fiscal Year 2023 increased 10% from the previous year. (R. 286.) The number of representation petitions filed in the first six months of Fiscal Year 2023 also increased from the same time period in Fiscal Year 2022. (*Id.*) This is compounded by Fiscal Year 2022's "surge in NLRB caseload": an increase of 53% or the "largest percentage increase since Fiscal Year 1959." (*Id.* at 288.)

At the same time as the Board is experiencing this "surge in caseload," it claims that it "remains understaffed" and is "struggl[ing] with funding and staff shortages." (*Id.*) Indeed, in the past two decades, the Board reports its overall staffing level has decreased by 39% and by 50% in the Regional Offices. (*Id.* at 290.) The NLRB's General Counsel recently described the agency as "woefully underfunded, under-resourced, [and] understaffed" and admitted that the lack of resources is causing "delays in case processing." (*Id.* at 296.)

Especially in light of the recent increase in the Board's caseload and the agency's own comments about its resources and staffing, the expenditure of further resources on this *de minimis* and already-remedied matter is not an efficient use of agency resources. Both the Board and the Court of Appeals for the District of Columbia have previously recognized that the expenditure of the Board's limited resources on trivial matters is not an effective use of such

40

resources and should be avoided. *See American Fed. of Musicians, Local 76 (Jimmy Wakely Show),* 202 NLRB 620, 621 (1973) (observing in the face of an allegation with minor impact, "The Board's rising case load and the problems involved in handling it could be alleviated if cases of this type were not processed."); *Dallas Mailers Union, Loc. No. 143 v. NLRB*, 445 F.2d 730, 732-33 (D.C. Cir. 1971) ("At a time when this court is confronted with an all-time high in caseload and backlog, it is most unfortunate that three of its judges must conscientiously spend the necessary time to do justice to a dispute that should have been settled long ago.").

The same is true here. Enforcement of the Board's order in this case would serve only to encourage the agency to continue pursing trifling allegations such as this one, even where the alleged violation has long been cured. Such an approach does not comport with the NLRB's substantial resource challenges and detracts from its ability to address matters of actual significance.

For all the foregoing reasons, the circumstances presented here do not establish a violation of Section 8(a)(1) of the Act, and the Board's Decision and Order should be vacated.

## CONCLUSION

Amazon's petition for review should be granted, and the NLRB's cross-application for enforcement should be denied because (1) the Board's legal conclusion in this case is unconnected to the statutory language it purports to be

enforcing; (2) Amazon promptly and effectively cured any alleged violation of the Act when it learned of the claimed violation; and (3) the pursuit of allegations such as the trifling issue at the center of this case is inconsistent with the proper exercise of administrative agency power.

Respectfully submitted,

_s/Brian Stolzenbach_

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned, counsel of record for Petitioner/Cross-Respondent Amazon.com Services LLC, hereby certifies that all material required by Circuit Rule 30(a) and (b) are included in the attached short appendix.

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7)

The undersigned, counsel of record for Petitioner/Cross-Respondent Amazon.com Services LLC, hereby certifies that this brief conforms to the rules contained in FRAP Rule 32(a)(7). This brief was prepared in 12-point Book Antiqua font in the body and footnotes and was prepared using Microsoft Word. The referenced word processing system indicates a total word count of 11,134, beginning at page "1," as authorized and determined under FRAP Rule 32(a)(7)(B).

## PROOF OF SERVICE

The undersigned, counsel of record for Amazon.com Services LLC, hereby certifies that on July 15, 2024, an electronic copy of this brief was served by ECF on the following counsel of record for the National Labor Relations Board:

<div align="center">

Jennifer Abruzzo
Ruth E. Burdick
Ms. Usha Dheenan
David Habenstreit
Gregoire Sauter
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570-0001

</div>

**Dated:  July 15, 2024**

<div align="center">

_s/Brian Stolzenbach_

</div>

**ATTACHED REQUIRED SHORT APPENDIX**

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

**Amazon.Com Services, LLC** *and* **Matthew R. Littrell.** Case 09–CA–298870

March 29, 2024

DECISION AND ORDER

BY CHAIRMAN MCFERRAN AND MEMBERS PROUTY AND WILCOX

The General Counsel seeks summary judgment in this case on the grounds that there are no genuine issues of material fact as to the allegations of the complaint, and that the Board should find, as a matter of law, that the Respondent violated Section 8(a)(1) of the Act by promulgating and maintaining an unlawful work rule restricting the access rights of its off-duty employees. The Respondent seeks summary judgment on the grounds that any violation of the Act alleged in the complaint was de minimis and effectively repudiated. As explained below, we grant the General Counsel's Motion for Summary Judgment and deny the Respondent's Cross-Motion for Summary Judgment.

Upon a charge filed by Matthew R. Littrell on July 6, 2022, the General Counsel issued a First Amended Consolidated Complaint and Order Postponing Hearing on May 2, 2023. On June 27, 2023, the Acting Regional Director for Region 9 issued an Order Severing a Complaint Allegation in Case 09–CA–298870 and Reissuing the Complaint Allegation in a Separate Complaint. The Order severed the allegation that the Respondent promulgated and maintained an unlawful off-duty employee access rule, as alleged in Case 09–CA–298870, from the remaining allegations in the First Amended Consolidated Complaint. That same day, the Acting Regional Director issued a Complaint and Order Scheduling Hearing in Case 09–CA–298870 alleging that, on or about June 30, 2022, the Respondent electronically promulgated and maintained, until on or about July 8, 2022, an unlawful off-duty employee access rule. On July 11, 2023, the Respondent filed an answer to the complaint denying the allegation and asserting certain defenses.

On August 7, 2023, the General Counsel filed a Motion to Transfer Proceedings to the Board and for Summary Judgment With Supporting Argument and exhibits. On September 1, 2023, the Board issued an Order Transferring Proceeding to the Board and Notice to Show Cause why the General Counsel's motion should not be granted.

On November 10, 2023, the Respondent filed an Opposition to the General Counsel's Motion for Summary Judgment and Cross-Motion for Summary Judgment in Amazon's Favor, with supporting exhibits. On November 24, 2023, the General Counsel filed a Reply to the Respondent's opposition to the General Counsel's Motion for Summary Judgment. On December 12, 2023, the General Counsel filed a Position on Respondent's Cross-Motion for Summary Judgment.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

Rulings on Motions for Summary Judgment

*A. Facts*

On about June 30, 2022, the Respondent electronically promulgated the following employee work rule regulating access to its facilities by off-duty employees:

**Policy: Off Duty Access—CAN and US**

**Purpose** Employee safety and security is important to Amazon, and this policy describes the safe and secure access to Amazon buildings and working areas outside of buildings. This policy allows Amazon to more easily ascertain who is present and enables Amazon to plan our support staffing, services, maintenance and related functions accordingly.

**Applicability**

This policy applies to WW Consumer Operations in the Canada and the United States. It applies in these businesses, excluding Physical Stores:

• Amazon Transportation Services (ATS).

• Global Customer Fulfillment (GCF).

• Global Delivery Services (GDS).

• Global Specialty Fulfillment (GSF).

• Customer Service (CS)

It applies to all Amazon employees working in operation sites.

This includes fulltime, reduced-time, part-time, regular, flex, and seasonal employees.

**Overview**

During their off-duty periods (that is, on their days off and before and after their shifts), employees are not permitted inside the building or in working areas outside the building.

**Additional support** If you have questions or concerns, reach out to your manager or PXT representative.

This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate.

On about July 8, 2022, the Respondent electronically distributed a message notifying its employees that it had removed certain unspecified language from its June 30 electronic promulgation of its Off Duty Access policy for employees. The July 8 notification provided:

> An important note about the new Off Duty Access Policy
>
> We recently shared our new Off Duty Access Policy. The mobile A to Z webpage where the policy was hosted inadvertently included additional language, which has since been removed. The substance of the policy has not changed, and you can review it here [embedding link to revised rule].
>
> Please note, this policy will not be enforced discriminatorily against employees engaging in protected activity.

### B. Analysis and Conclusions

#### 1. There Are No Genuine Issues of Material Fact

The General Counsel alleges that the Respondent's work rule regulating access to its facilities by off-duty employees promulgated on about June 30, 2022, violates Section 8(a)(1) of the Act. The General Counsel further alleges that the Respondent maintained the unlawful rule until about July 8, 2022. The General Counsel argues that the rule as promulgated and maintained is unlawful under the Board's test for evaluating employer access rules for off-duty employees set forth in *Tri-County Medical Center*, 222 NLRB 1089 (1976).

The Respondent admits it promulgated and maintained its off-duty access rule on about June 30, 2022, and maintained the rule until about July 8, 2022. The Respondent argues, however, that the rule does not violate the test in *Tri-County Medical Center* and, even if it did, any alleged violation of the Act was de minimis and was effectively repudiated.

"It is a settled principle that for summary judgment to be appropriate the record must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Conoco Chemicals Co.*, 275 NLRB 39, 40 (1985) (citing *Stephens College*, 260 NLRB 1049, 1050 (1982)); see also *Spectrum Health Services, Inc.*, 372 NLRB No. 21, slip op. at 2 (2022). Neither the General Counsel nor the Respondent asserts that there are any material factual issues in dispute, and both parties seek summary judgment based on the undisputed facts. In the absence of any genuine issues of material fact requiring a hearing before an administrative law judge concerning the promulgation and maintenance of the Respondent's off-duty access rule, and the Respondent's conduct to attempt to cure any alleged violation of the Act, we find summary judgment is appropriate.

#### 2. Application of Legal Principles

The Board evaluates employer access rules for off-duty employees under *Tri-County Medical Center* and will find an access rule valid only if it: "(1) limits access solely with respect to the interior of the plant and other working areas; (2) is clearly disseminated to all employees; and (3) applies to off-duty employees seeking access to the plant for any purpose and not just to those employees engaging in union activity." See 222 NLRB at 1089 ("[E]xcept where justified by business reasons, a rule which denies off-duty employees entry to parking lots, gates, and other outside nonworking areas will be found invalid."). The General Counsel alleges that the Respondent's off-duty employee access rule does not satisfy prong three of the *Tri-County* test. We agree.

The Respondent's off-duty employee access rule provides that "[t]his policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate." Board precedent fully supports finding that the Respondent's "reserv[ation] of the right to depart" from its off-duty access rule "when deemed appropriate" is unlawful under the third prong of *Tri-County* because it grants the Respondent discretion to decide when and why off-duty employees may access its facilities. In *Piedmont Gardens*, 360 NLRB 813, 813 (2014), the Board considered the employer's policy prohibiting employees from remaining on its premises after their shift "unless previously authorized" by their supervisor. The Board found that policy unlawful under the third prong of the *Tri-County* test, explaining:

> the [r]espondent's policy contains an exception, indefinite in scope, under which off-duty access is permitted with supervisory authorization. The vice in such a rule is that it gives the Respondent broad—indeed, unlimited—discretion to decide when and why employees may access the facility. [Citations and internal quotation marks omitted.]

Accord: *Southern Bakeries, LLC*, 368 NLRB No. 59, slip op. at 1–2 (2019) (finding rule against unauthorized access failed third prong of *Tri-County* because it gave the employer unlimited discretion to determine when employees may access the facility); *Lytton Rancheria of California*, 361 NLRB 1350, 1353 (2014) (the rule "provides for any additional access solely with management's approval. This last exception effectively vests management with unlimited discretion to expand or deny off-duty employees' access for any reason it

chooses . . . . The Respondent's policy thus clearly fails the third prong of the *Tri-County* test."); *Saint John's Health Center*, 357 NLRB 2078, 2082 (2011) ("In effect, the [r]espondent is telling its employees, you may not enter the premises after your shift except when we say you can."). The Respondent's off-duty access rule for employees suffers from this same vice, and is accordingly unlawful.

The Respondent seeks to distinguish these cases on the basis that its rule does not require supervisory or managerial authorization as a precondition by off-duty employees seeking to gain access to its facilities. We see no relevant difference, however, between requiring authorization and, in the instant case, "Amazon reserv[ing] the right to depart from the policy when deemed appropriate." In each instance, unlimited discretion is vested in the employer to allow access as it sees fit.[1]

The Respondent also argues that, even assuming the off-duty access rule as promulgated and maintained violated the Act, it effectively repudiated and therefore should not be held liable for the violation by promulgating a revised rule deleting the offending language that reserved the right to depart from the policy. We find that the Respondent's issuance of the revised rule did not constitute an effective repudiation that relieved it of liability for its violation of the Act.

The well-established test to determine whether an employer has adequately repudiated its violation of the Act is set forth in *Passavant Memorial Area Hospital*, 237 NLRB 138 (1978). The Board explained in *Lytton Rancheria of California*:

> In order for a repudiation to serve as a defense to an unfair labor practice finding, it must be timely, unambiguous, specific in nature to the coercive conduct, and untainted by other unlawful conduct. In addition, there must be adequate publication of the repudiation to the employees involved, and the repudiation must assure employees that, going forward, the employer will not interfere with the exercise of their Section 7 rights.

361 NLRB at 1353 (citing *Passavant*, 237 NLRB at 138–139). The Respondent did not adequately repudiate its violation of the Act under *Passavant* because when it notified employees that it had issued a revised rule, it failed to identify the unlawful provision contained in its rule as initially promulgated. Instead, the Respondent merely advised employees that the initial rule contained unspecified "language which has since been removed." The Respondent never identified to employees that the language "which has since been removed" had unlawfully "reserve[d] the right to depart" from its off-duty access rule "when deemed appropriate." Indeed, the Respondent did not admit any wrongdoing at all. Thus, the Respondent's asserted repudiation of its unlawful conduct entirely failed to include language "specific in nature to the coercive conduct" as *Passavant* requires. To the contrary, the Respondent declared in its revised rule that "[t]he substance of its policy had not changed."[2]

In contrast, in *ExxonMobil Research & Engineering Co.*, 372 NLRB No. 138, slip op. at 3 (2023), cited by the Respondent, the Board found successful repudiation of unlawful conduct under *Passavant* where the respondent specifically identified its coercive conduct. The respondent in *ExxonMobil* specifically advised its employees that:

> Under the National Labor Relations Act (NLRA), the Company's [Employee Information Bulletin] statement about time away from work to vote could be construed as what is called unlawful "direct dealing," meaning we bypassed the [Union] and made an offer directly to its members. That was not the Company's intention, but the Company cannot present a proposal to employees that it has not already presented to the employees' union. The Company will not engage in any direct dealing in the future.

Id. The Board found that the repudiation in *ExxonMobil* was specific in nature to the coercive conduct at issue there (direct dealing), as *Passavant* requires. Id., slip op. at 9–10.

In *TBC Corporation and TBC Retail Group Inc.*, 367 NLRB No. 18, slip op. at 2 (2018), also cited by the Respondent, the Board likewise found the respondents successfully repudiated their unlawful no-solicitation rule under the *Passavant* standard by providing employees with assurances regarding their Section 7 rights which specifically identified the unlawful provision contained in the rule.[3] The Board explained that the assurances given to

---

[1] The Respondent additionally argues that the third prong of *Tri-County* should be interpreted to prohibit only off-duty access rules that discriminate against union activity. Absent such discrimination, it urges the Board to read the third prong to permit limited exceptions to prohibiting off-duty access. The Respondent's rule, however, does not purport to carve out a limited exception. Rather, it is crafted in explicitly broad language allowing the Respondent to permit or deny access without limitation. As explained above, this is unlawful under established case precedent.

[2] See, e.g., *Rivers Casino*, 356 NLRB 1151, 1152 (2011) (no repudiation under *Passavant* because, inter alia, the employer did not admit any wrongdoing); *Holly Farms Corp.*, 311 NLRB 273, 274 (1994) (same), enfd. 48 F.3d 1360 (4th Cir.1995), affd. on other grounds 517 U.S. 392 (1996); *Branch International Services*, 310 NLRB 1092, 1105 (1993) (no repudiation under *Passavant* of employer's refusal to negotiate over grievances where it did not acknowledge that refusal), enfd. 12 F.3d 213 (6th Cir. 1993).

[3] The respondents in *TBC* notified employees that:

FEDERAL LAW GIVES YOU THE RIGHT TO:
- Form, join, or assist a union;
- Choose representatives to bargain with us on your behalf;
- Act together with other employees for your benefit and

4                DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

employees in *TBC* were specific and unambiguous.[4] The Respondent's nonspecific repudiation here falls well short of this case precedent and the requirements of *Passavant*.[5]

The Respondent additionally contends that it is entitled to summary judgment because the unlawful conduct in this case was de minimis. The Respondent argues that it maintained its unlawful off-duty employee access rule for only a limited period of time and, thus, few of its employees viewed it.[6] When unlawful conduct is "so minimal and has been substantially remedied by the Respondent's subsequent conduct," the Board may find that it does not rise to the level of constituting a violation of the Act. See *American Federation of Musicians Local 76 (Jimmy Wakely Show),* 202 NLRB 620, 620–621 (1973). In this case, however, for the same reasons discussed above, the unlawful conduct was not substantially remedied. Moreover, we cannot dismiss as insignificant that, according to the Respondent's calculations, at least some 200 employees viewed the unlawful rule. In these circumstances, we do not find it appropriate to dismiss the complaint allegation as de minimis.

Accordingly, for all these reasons, we grant the General Counsel's Motion for Summary Judgment and deny the Respondent's Cross-Motion for Summary Judgment.

### FINDINGS OF FACT

#### I. JURISDICTION

At all material times, Respondent has been a corporation with an office and place of business in Campbellsville, Kentucky, and has been engaged in the retail sale and distribution of consumer goods. During the 12-month period ending January 1, 2023, the Respondent, in conducting its operations described above, has derived gross revenues in excess of $500,000. During this time period, the Respondent sold and shipped from its Campbellsville, Kentucky facility products, goods, and materials valued in excess of $50,000 directly to points outside the Commonwealth of Kentucky.

We find that the Respondent is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

#### II. ALLEGED UNFAIR LABOR PRACTICES

On about June 30, 2022, the Respondent promulgated an off-duty access rule for its employees, and maintained that rule until about July 8, 2022. The rule as promulgated and maintained provides that "[t]his policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate."

#### CONCLUSIONS OF LAW

1. The Respondent is an employer within the meaning of Section 2(2), (6), and (7) of the Act.

2. By promulgating and maintaining an unlawful off-duty employee access rule which grants the Respondent discretion to decide when and why off-duty employees may access its facilities, the Respondent has engaged in unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act, and has violated Section 8(a)(1) of the Act.

#### REMEDY

Having found that the Respondent has engaged in certain unfair labor practices, we shall order it to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act. We shall order the Respondent to post and maintain the Board's notice for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, the notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means.[7]

We have included language in the remedial notice informing employees that the rule has been revised to

---

protection; and

• Choose not to engage in any of these protected activities.

**WE WILL NOT** do anything that interferes with these rights.

Specifically:

**WE WILL NOT** promulgate or maintain Written Work rules prohibiting you from:

1) Soliciting in our buildings, on our property, or during work hours. We will continue to have a work rule that prohibits you from soliciting during an employee's working time or with another employee during that employee's working time. "Working time" does not include such time as breaks, lunch, or rest periods, or before and after work.

[4] See also *Atlas Logistics Group Retail Services (Phoenix),* 357 NLRB 353, 357–358 (2011) (finding valid repudiation of work rules under *Passavant* where the respondent notified employees that it had

revised its rules and specifically "assured them of their rights under the Act as they pertained to the rules" and emphasizing "the assurances that [respondent] gave to employees concerning the work rules").

[5] The Respondent argues that it also notified employees that its revised rule "will not be enforced discriminatorily against employees engaging in protected activity." We find this notification similarly insufficient because it does not specify the coercive conduct and does not identify or mention the unlawful provision contained in its rule as initially promulgated.

[6] As noted, the policy was promulgated on about June 30, 2022, and maintained until about July 8, 2022. The Respondent asserts that about 200 of its employees viewed the unlawful rule.

[7] The parties dispute which particular places the Respondent customarily physically posts notices to its employees, and further dispute which particular means of electronic communication the Respondent uses to communicate with its employees. We defer these issues to the compliance stage of these proceedings.

remove the unlawful provision.  See, e.g., *Union Tank Car Co.*, 369 NLRB No. 120, slip op. at 6 (2020); *Lily Transportation*, 362 NLRB 406, 408 (2015).

<div align="center">ORDER</div>

The National Labor Relations Board orders that the Respondent, Amazon.com Services, LLC, Campbellsville, Kentucky, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a)  Promulgating and maintaining an unlawful off-duty employee access rule which provides that Amazon reserved the right to depart from the rule when deemed appropriate and thus grants Amazon discretion to decide when and why off-duty employees may access its facilities.

(b)  In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a)  Within 14 days after service by the Region, post at its facility in Campbellsville, Kentucky copies of the attached notice marked "Appendix."[8]  Copies of the notice, on forms provided by the Regional Director for Region 9, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted.  In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means.  Reasonable steps shall be taken by the Respondent to ensure that the notice is not altered, defaced, or covered by any other material.  If the Respondent has gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at any time since June 30, 2022.

(b)  Within 21 days after service by the Region, file with the Regional Director for Region 9 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C.  March 29, 2024

_____
Lauren McFerran,                    Chairman


_____
David M. Prouty,                    Member


_____
Gwynne A. Wilcox,                   Member

(SEAL)          NATIONAL LABOR RELATIONS BOARD

<div align="center">APPENDIX</div>

<div align="center">NOTICE TO EMPLOYEES<br>POSTED BY ORDER OF THE<br>NATIONAL LABOR RELATIONS BOARD<br>An Agency of the United States Government</div>

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

    Form, join, or assist a union

    Choose representatives to bargain with us on your behalf

    Act together with other employees for your benefit and protection

    Choose not to engage in any of these protected activities.

On July 8, 2022, we advised you that we were promulgating a revised off-duty employee access rule which removed a provision from our previous off-duty employee access rule.  That provision, which provided that Amazon reserved the right to depart from the rule when deemed

---

[8]  If the facility involved in these proceedings is open and staffed by a substantial complement of employees, the notices must be posted within 14 days after service by the Region.  If the facility involved in these proceedings is closed or not staffed by a substantial complement of employees due to the Coronavirus Disease 2019 (COVID-19) pandemic, the notices must be posted within 14 days after the facility reopens and a substantial complement of employees has returned to work.  If, while closed or not staffed by a substantial complement of employees due to the pandemic, the Respondent is communicating with its employees by electronic means, the notice must also be posted by such electronic means within 14 days after service by the Region.  If the notice to be physically posted was posted electronically more than 60 days before physical posting of the notice, the notice shall state at the bottom that "This is the same notice previously [sent or posted] electronically on [date]."  If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

appropriate, was alleged to violate federal labor law. The National Labor Relations Board has now found that provision is unlawful.

WE WILL NOT promulgate and maintain an unlawful off-duty employee access rule which provides that Amazon reserved the right to depart from the rule when deemed appropriate and thus grants Amazon discretion to decide when and why off-duty employees may access its facilities.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

AMAZON.COM SERVICES, LLC

The Board's decision can be found at https://www.nlrb.gov/case/09-CA-298870 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20003, or by calling (202) 273-1940.

