**Nos. 24-1548, 24-1619**

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

## AMAZON.COM SERVICES, LLC

**Petitioner/Cross-Respondent**

**v.**

## NATIONAL LABOR RELATIONS BOARD

**Respondent/Cross-Petitioner**

———————————————

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

———————————————

## BRIEF FOR THE NATIONAL LABOR RELATIONS BOARD

———————————————

**JENNIFER A. ABRUZZO**
  *General Counsel*

**PETER SUNG OHR**
  *Associate General Counsel*

**RUTH E. BURDICK**
  *Deputy Associate General Counsel*

**DAVID HABENSTREIT**
  *Assistant General Counsel*

**USHA DHEENAN**
  *Supervisory Attorney*

**BARBARA SHEEHY**
  *Attorney*

**National Labor Relations Board**
**1015 Half Street, SE**
**Washington, DC 20570**
**(202) 273-2948**
**(202) 273-0094**

# Table of Contents

**Headings**                                                                 **Page(s)**

Statement of jurisdiction ...................................................................…...1

Statement of the issue ...........................................................................2

Statement of the case............................................................................2

   I.   Procedural history ........................................................................2

   II.  The Board's findings of fact ........................................................3

        A.   Background; Amazon issues an off-duty-access rule reserving the right to depart from it "when deemed appropriate" .............................3

        B.   Amazon revises the off-duty-access rule by eliminating the reservation-of-rights provision but does not inform employees of the specific change ............................................................4

   III.  The Board's conclusion and Order...................................................5

Summary of argument.............................................................................6

Standard of review ...............................................................................8

Argument...........................................................................................11

   Substantial evidence supports the Board's finding that Amazon's off-duty-access rule violated Section 8(a)(1) of the Act ...................................................11

        A.   The Board applies a three-part test to determine when off-duty-acess rules interfere with Section 7 rights ............................11

        B.   Amazon's off-duty-access rule failed to satisfy the third prong of *Tri-County* .................................................................14

        C.   Amazon's challenges to the Board's finding that the off-duty-access policy violates the Act lack merit.......................................16

            1.   Section 10(e) of the Act bars the Court from considering Amazon's claim that the Board misinterpreted the Act ..............16

## Table of Contents (cont'd)

**Headings**                                                                                                    **Page(s)**

    2.   Notwithstanding the jurisdictional bar, Amazon wrongly maintains that there is no violation absent evidence of discrimination ............................................................................17

    3.   Notwithstanding the jurisdictional bar, Board precedent sufficiently explains why workplace rules that both prohibit off-duty access and permit exceptions based on unfettered employer discretion violate the Act; and the Board's decision here is consistent with that precent ............................................18

    4.   Amazon relies on inapposite cases ...............................................21

  D.  Amazon failed to carry its burden to show that it effectively repudiated its unlawful off-duty-access rule ........................................23

  E.  Amazon's public policy argument provides no basis to deny enforcemen ...........................................................................29

Conclusion ...................................................................................................32

# Table of Authorities

**Cases**                                                         **Page(s)**

*6 West Corp. v. NLRB*,
  237 NLRB F.3d 767 (7th Cir. 2001).................................................................22

*Allentown Mack Sales & Service, Inc. v. NLRB*,
  522 U.S. 359 (1998)..........................................................................................9

*Amazon.com Services, LLC*,
  373 NLRB No. 96, 2024 WL 4164482 (Sep. 10, 2024)....................................31

*AutoNation, Inc. v. NLRB*,
  801 F.3d 767 (7th Cir. 2015) .............................................................................8

*Beth Israel Hospital v. NLRB*,
  437 U.S. 483 (1978)..........................................................................................12

*Boch Imports, Inc. v. NLRB*,
  826 F.3d 558 (1st Cir. 2016).......................................................... 24, 25, 28, 29

*Boch Imports, Inc.*,
  362 NLRB 706 (2015), *enforced*,
  826 F.3d 558 (1st Cir. 2016).......................................................... 24, 25, 26, 27

*Branch International Services*,
  310 NLRB 1092, *enforced*,
  12 F.3d 213 (6th Cir. 1993) .............................................................................26

*Brandeis Machinary & Supply Co. v. NLRB*,
  412 F.3d 822 (7th Cir. 2005) ...........................................................................20

*Caesars Entertainment*,
  362 NLRB 1690 (2015) ....................................................................................20

*Casino San Pablo*,
  361 NLRB 1350, 1353 (2014) ..........................................................................26

*Cintas Corp. v. NLRB*,
  589 F.3d 905 (8th Cir. 2009) ...................................................................... 23, 24

## Table of Authorities (cont'd)

**Cases**                                                                    **Page(s)**

*Constellation Brands U.S. Operations, Inc. v. NLRB*,
  992 F.3d 642 (7th Cir. 2021) ...........................................................9, 10

*Contemporary Cars, Inc. v. NLRB*,
  814 F.3d 859 (7th Cir. 2016) ................................................................18

*DaNite Sign Co.*,
  356 NLRB 975 (2011) ...........................................................................26

*Eastex, Inc. v. NLRB*,
  437 U.S. 556 (1978)...............................................................................12

*Fleming Co. v. NLRB*,
  349 F.3d 968 (7th Cir. 2000) ................................................................22

*Gale Products*,
  142 NLRB 1246 (1963) .........................................................................12

*Great Dane Trailers*,
  293 NLRB 384 (1989) ...........................................................................17

*Guardian Industries Corp. v. NLRB*,
  49 F.3d 317 (7th Cir. 1995) ..................................................................21

*Hillhaven Highland House*,
  336 NLRB 646 (2001), *enforced*,
  344 F.3d 523 (6th Cir. 2003) ................................................................13

*Holly Farms Corp.*,
  311 NLRB 273 (1994), *enforced*,
  48 F.3d 1360 (4th Cir. 1995), *affirmed on other grounds*,
  517 U.S. 392 (1996)...............................................................................26

*Indianapolis Power & Light Co. v. NLRB*,
  898 F.2d 524 (7th Cir. 1990) ..................................................................8

*International Union of Operating Engineers v. NLRB*,
  109 F.4th 905 (7th Cir. 2024) ............................................................9, 10

## Table of Authorities (cont'd)

**Cases**                                                          **Page(s)**

*Kable Printing Co. v. NLRB*,
   545 F.2d 1079 (7th Cir. 1976) ...............................................................19

*Lexington Metal Products Co.*,
   166 NLRB 878 (1967) ...........................................................................17

*Lily Transportation Corp.*,
   362 NLRB 406 (2015) ............................................................ 24, 25, 27

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024) .........................................................................10

*Lytton Rancheria of California*,
   361 NLRB 1350 (2014) .........................................................................15

*Marina Del Rey Hospital*,
   363 NLRB 231 (2015) ...........................................................................20

*Mondelez Global, LLC v. NLRB*,
   5 F.4th 759 (7th Cir. 2021) ...................................................................10

*NLRB v. Alwin Manufacturing Co.*,
   78 F.3d 1159 (7th Cir. 1996) ...............................................................17

*NLRB v. Erie Brush & Manufacturing Corp.*,
   406 F.3d 795 (7th Cir. 2005) ...........................................................8, 10

*NLRB v. Erie Resistor Corp.*,
   373 U.S. 221 (1963)............................................................................8, 9

*NLRB v. General Thermodynamics, Inc.*,
   670 F.2d 719 (7th Cir. 1982) .................................................. 18, 20, 30

*NLRB v. Gissel Packing Co.*,
   395 U.S. 575 (1969)................................................................................9

*NLRB v. Intertherm, Inc.*,
   596 F.2d 267 (8th Cir. 1979) ...............................................................28

## Table of Authorities (cont'd)

**Cases**                                                              **Page(s)**

*NLRB v. Jam Products, Ltd.*,
66 F.4th 654 (7th Cir. 2023) .....................................................................9

*NLRB v. Ohio Masonic Home*,
892 F.2d 449 (6th Cir. 1989) ............................................................ 13, 15

*NLRB v. P\*I\*E Nationwide, Inc.*,
923 F.2d 506 (7th Cir. 1991) ............................................................ 27, 30

*NLRB v. So-White Freight Lines, Inc.*,
969 F.2d 401 (7th Cir. 1992) .....................................................................8

*NLRB v. Teamsters General Local Union No. 200*,
723 F.3d 778 (7th Cir. 2013) .....................................................................9

*NLRB v. Virginia Electric & Power Co.*,
314 U.S. 469 (1941)....................................................................................9

*Passavant Memorial Area Hospital*,
237 NLRB 138 (1978) ....................................................................... 23, 24

*Piedmont Gardens*,
360 NLRB 813 (2014) ................................................................. 15, 19, 21

*Register Guard*,
351 NLRB 1110 (2007) .............................................................................23

*Republic Aviation Corp. v. NLRB*,
324 U.S. 793 (1945).................................................................................22

*Rivers Casino*,
356 NLRB 1151 (2011) ..................................................................... 26, 27

*Southern Maryland Hospital Center*,
916 F.2d 932 (4th Cir 1990) .............................................................. 13, 18

*Saint John's Health Center*,
357 NLRB 2078 (2011) ........................................................ 12, 13, 14, 19, 22

**Table of Authorities (cont'd)**

**Cases**                                                                **Page(s)**

*Sam's Club v. NLRB*,
   141 F.3d 653 (6th Cir. 1998) ...............................................................24

*Sassaquin Nursing & Rehabilitation Center, Inc.*,
   326 NLRB 6 (1998) ...........................................................................17

*Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*,
   436 U.S. 180 (1978)...........................................................................12

*Sodexo America, LLC*,
   361 NLRB 927 (2014) .......................................................................20

*Southern Bakeries, LLC*,
   368 NLRB No. 59, 2019 WL 4082690 (Aug. 28, 2019) ....................15

*Stern Produce Co. v. NLRB*,
   97 F.4th 1 (D.C. Cir. 2024)...............................................................19

*Tri-County Medical Center*,
   222 NLRB 1089 (1976) .....................................................................13

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951).........................................................................8, 9

*Utrad Corp. v. NLRB*,
   454 F.2d 520 (7th Cir. 1971) ...................................................... 18, 30

*Webco Industries, Inc.*,
   327 NLRB 172 (1998), *enforced*,
   217 F.3d 1306 (10th Cir. 2000) ........................................................25

*Wilson Trophy Co. v. NLRB*,
   989 F.2d 1502 (8th Cir. 1993) ..........................................................27

*Woelke & Romero Framing, Inc. v. NLRB*,
   456 U.S. 645 (1982)..........................................................................17

**Statutes** **Page(s)**

National Labor Relations Act, as amended
(29 U.S.C. §§ 151 et seq.)

Section 7 (29 U.S.C. § 157) ..........................................................................11

Section 8(a)(1) (29 U.S.C. § 158(a)(1)).......................................................11

Section 10(e) (29 U.S.C. § 160(e)) ...........................................................8, 16

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

————————————

## Nos. 24-1548 & 24-1619

————————————

## AMAZON.COM SERVICES, LLC

### Petitioner/Cross-Respondent

### v.

## NATIONAL LABOR RELATIONS BOARD

### Respondent/Cross-Petitioner

————————————

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR
## ENFORCEMENT OF AN ORDER OF
## THE NATIONAL LABOR RELATIONS BOARD

————————————

## BRIEF FOR THE NATIONAL LABOR RELATIONS BOARD

————————————

## STATEMENT OF JURISDICTION

The jurisdictional statement in the brief filed by Amazon.com Services, LLC

("Amazon") is complete and correct.[1]

---

[1] In this brief, "R." refers to record filed with the Court.  References preceding a
semicolon are to the Board's findings; those following are to the supporting
evidence.  "Br." refers to Amazon's opening brief.

## STATEMENT OF THE ISSUE

Whether substantial evidence supports the Board's finding that Amazon's off-duty-access rule violated Section 8(a)(1) of the Act?

## STATEMENT OF THE CASE

### I.     PROCEDURAL HISTORY

Based on a charge filed by an employee, the General Counsel issued a complaint alleging that Amazon had violated the Act by promulgating and maintaining an unlawful off-duty-access rule. The General Counsel moved for summary judgment; Amazon opposed and filed a cross-motion for summary judgment; and the General Counsel replied to Amazon's opposition and filed a position statement on Amazon's cross-motion. Acting on the summary judgment motions, the Board determined that there was no genuine issue of material fact, granted the General Counsel's motion, and denied Amazon's cross-motion. In doing so, the Board applied settled law to undisputed facts where Amazon published a policy to its million-plus employees that ran afoul of established precedent and never explained its rescission or repudiated the unlawful provision. Accordingly, Amazon's attempt to cast the case as one involving the Board's novel statutory interpretation is fiction.

## II.     THE BOARD'S FINDINGS OF FACT

### A.     Background; Amazon Issues an Off-Duty-Access Rule Reserving the Right To Depart from It "When Deemed Appropriate"

Amazon is engaged in the retail sale and distribution of consumer goods.

(R. 330; R. 86, 92-93.)  It has an office and place of business in Campbellsville,

Kentucky, where the charging-party employee works.  (R. 330; R. 86, 92-93.)

On June 30, 2022, Amazon issued an off-duty-access rule governing "the

safe and secure access to [its] buildings and working areas outside of buildings."

(R. 327; R. 86-87, 93.)  According to Amazon, the work rule allows it "to more

easily ascertain who is present and enables [it] to plan [] support staffing, services,

maintenance and related functions accordingly."  (R. 327; R. 86-87, 93.)  The rule

had wide applicability, covering:

> WW Consumer Operations in Canada and the United States.  It
> applies in these businesses, excluding Physical Stores:
>
> * Amazon Transportation Services (ATS)
> * Global Customer Fulfillment (GCF)
> * Global Delivery Services (GDS)
> * Global Specialty Fulfillment (GSF)
> * Customer Service (CS)
>
> It applies to all Amazon employees working in operation sites.
>
> This includes fulltime, reduced-time, part-time, regular, flex, and
> seasonal employees.

(R. 327; R. 86-87, 93.)  The off-duty-access rule prohibited employees, "[d]uring

their off-duty periods (that is, on their days off and before and after their shifts),"

3

from being "inside the building or in working areas outside the building."  (R. 327; R. 86-87, 93.)  The work rule ended with a disclaimer informing employees that the rule "may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate."  (R. 327; R. 86-87, 93.)

### B.    Amazon Revises the Off-Duty-Access Rule By Eliminating the Reservation-of-Rights Provision But Does Not Inform Employees of the Specific Change

On July 8, Amazon electronically distributed a message notifying its employees that it had removed certain unspecified language from the June 30 promulgation of its off-duty-access policy for employees.  (R. 328; R. 164-65, 249-50.)  In the July 8 notification, Amazon indicated that it "inadvertently included additional language [in the policy], which has since been removed.  The substance of the policy has not changed, and you can review it here [embedding link to revised rule]."  (R. 328; R. 164-65, 249-50.)  Amazon added that "this policy will not be enforced discriminatorily against employees engaging in protected activity." (R. 328; R. 164-65, 249-50.)

## III.   THE BOARD'S CONCLUSIONS AND ORDER

Based on the foregoing undisputed facts, the Board (Chairman McFerran and Members Prouty and Wilcox) found that Amazon violated Section 8(a)(1) of the Act by promulgating and maintaining an off-duty-access rule that grants Amazon "discretion to decide when and why off-duty employees may access its facilities."  (R. 330.)  The Board further found that Amazon had failed to repudiate the Section 8(a)(1) violation by merely re-issuing a revised policy without the undisputed offending language that reserved the right to depart from the policy.  (R. 329-30.)  The Board also rejected Amazon's defense that the unlawful conduct was de minimis.  (R. 330.)

The Board's Order requires Amazon to cease and desist from the unfair labor practices found and from, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.  Affirmatively, the Order requires Amazon to post a remedial notice at its facility in Campbellsville, Kentucky and distribute it electronically informing employees that the rule has been revised to remove the unlawful provision.  (R. 330-31.)

## SUMMARY OF ARUGMENT

Substantial evidence supports the Board's finding that Amazon violated Section 8(a)(1) of the Act by promulgating and maintaining an off-duty-access policy that permitted Amazon to depart from it in its sole discretion. The unbridled discretion to deviate from the uniform ban on off-duty-employee access to Amazon's premises unlawfully interferes with employees' Section 7 rights because it leaves to Amazon to decide unilaterally when and who may access the premises. Almost a half-century ago, the Board announced the now-settled, judicially approved principle that an employer may not discriminate based on protected activity in granting or denying off-duty employees access to the premises. In applying that principle, the Board has more specifically found that an employer unlawfully discriminates in violation of Section 8(a)(1) by imposing an access ban that grants it the discretion to allow access when it says. Here, the Board hewed to that precedent and determined that Amazon's workplace rule was unlawful.

None of Amazon's attacks on the Board's finding has merit. Amazon first lodges a statutory-construction claim, which the Court is jurisdictionally barred from considering because Amazon never raised it to the Board. While Amazon urged the lawfulness of its rule, it never argued that the Board wrongly premised the violation on a misinterpretation of Section 8(a)(1) and cannot do so now for the first time. In any event, Amazon's statutory-construction argument is baseless,

6

stemming mainly from a misapprehension of Board and judicial precedent. Amazon argues that there is no violation absent evidence of discriminatory enforcement of the policy—but the Board and the Court have long rejected this argument. Amazon next contends that the Board did not explain how the policy interferes with Section 7 rights—but a review of Board precedent puts the lie to this contention. Amazon faults the Board for employing a "no exceptions whatsoever" approach when examining no-access policies—but Board law cited by Amazon establishes that the Board allows for limited exceptions. And lastly, Amazon relies on cases involving discriminatory-enforcement violations—but its violation here is the promulgation and maintenance of an unlawful workplace rule.

Further, the Board properly rejected Amazon's defense that it had repudiated its unlawful action. Amazon did not disavow the unlawful provision, explain to employees the reason for the revision, admit any wrongdoing at all, or offer sufficient assurances to employees of their rights under the Act. And the Court should reject Amazon's "public policy" argument as unsupported by any authority and simply a desperate final attempt to escape liability.

## STANDARD OF REVIEW

The Court's standard of review in this case is well established. "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." *NLRB v. So-White Freight Lines, Inc.*, 969 F.2d 401, 405 (7th Cir. 1992) (quoting 29 U.S.C. § 160(e)). *See also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Further, where cases, such as this one, involve established facts and a settled rule of law, the Court asks only whether the facts satisfy the legal rule and reviews the Board's application of the law to particular facts under the substantial evidence standard. *See NLRB v. Erie Brush & Mfg. Corp.*, 406 F.3d 795, 801 (7th Cir. 2005) ("We are obligated to affirm the [Board's] findings of fact and applications of law to fact if they are supported by substantial evidence on the record considered as a whole."); *So-White*, 969 F.2d at 405 (same); *Indianapolis Power & Light Co. v. NLRB*, 898 F.2d 524, 529 (7th Cir. 1990) (same); *AutoNation, Inc. v. NLRB*, 801 F.3d 767, 771-74 (7th Cir. 2015) (reviewing "deferentially" Board's "application of the law to the facts"). In analyzing the Board's application of the law to particular facts, the Court "give[s] respect" to the Board's reasonable conclusions in recognition of "the Board's special function of applying the general provisions of the Act to the complexities of industrial life." *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236 (1963). The development of national labor policy is "a

8

difficult and delicate responsibility" that Congress "committed primarily to [the Board]." *Id.*

The standard of review "is not arduous." *Int'l Union of Operating Eng'rs v. NLRB*, 109 F.4th 905, 914 (7th Cir. 2024). *See also NLRB v. Jam Prods., Ltd.*, 66 F.4th 654, 668 (7th Cir. 2023). The "substantial evidence" standard is the degree of evidence that could satisfy a reasonable factfinder. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 377 (1998); *NLRB v. Teamsters Gen. Local Union No. 200*, 723 F.3d 778, 783 (7th Cir. 2013). A reviewing court may not, in applying that standard, "'displace the Board's choice between two fairly conflicting views,' even if [the court] 'would justifiably have made a different choice.'" *Constellation Brands U.S. Operations, Inc. v. NLRB*, 992 F.3d 642, 647 (7th Cir. 2021) (quoting *Universal Camera*, 340 U.S. at 488).

The Court recently affirmed that it "accept[s] the Board's legal conclusions unless they are irrational or inconsistent with the Act," a standard of review that reflects the Court's "respect for Congress's broad delegation of responsibility for developing national labor policy to the Board." *Int'l Union of Operating Eng'rs*, 109 F.4th at 915. *See also NLRB v. Gissel Packing Co.*, 395 U.S. 575, 620 (1969) ("It is true that a reviewing court must recognize the Board's competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship.") (quoting *NLRB v. Va. Elec. & Power Co.*, 314

9

U.S. 469, 479 (1941)).  The Court recognizes that "Congress intended to confer upon the Board broad authority to develop national labor policy and so we will uphold the Board's legal conclusions so long as they have a reasonable basis in the law." *Erie Brush*, 406 F.3d at 801 (citation omitted).

Amazon wrongly asserts (Br. 13-20) that these applicable standards have been overruled by the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), which overturned *Chevron* deference.  But the NLRA-specific cases cited above rely on principles that pre-date *Chevron* and are independent from that doctrine.  The Court's post-*Loper Bright* adherence to these principles in cases arising from the Board is consistent with that longstanding approach.  *Int'l Union of Operating Eng'rs*, 109 F.4th at 914 ("We assess whether substantial evidence supports the Board's factual findings and whether legal conclusions have a reasonable basis in law.") (quotations omitted) (citing *Mondelez Glob., LLC v. NLRB*, 5 F.4th 759, 768-69 (7th Cir. 2021) and *Constellation Brands*, 992 F.3d at 646).  And in all events, this case involves the application of established Board law to the undisputed facts, not the interpretation of the Act or a purely legal issue.[2]

---

[2] As discussed below (see *infra* p. 16), the Court is jurisdictionally barred from considering Amazon's lone statutory argument (Br. 21-28) because Amazon never raised it to the Board in the first instance.  And Amazon's breathless criticism that the Board is subject to more stringent review because of "oscillating standards" in other areas of its precedent (Br. 16-19) is off the mark.  As discussed below (see

## ARGUMENT

**SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT AMAZON'S OFF-DUTY-ACCESS RULE VIOLATED SECTION 8(a)(1) OF THE ACT**

Substantial evidence supports the Board's finding that Amazon's off-duty-access rule violated Section 8(a)(1) of the Act because it reserved to Amazon the right to depart from the rule when it deemed appropriate and thereby granted it discretion to decide when and why off-duty employees may access its facilities. Likewise, substantial evidence supports the Board's finding that Amazon failed effectively to repudiate the rule.

### A.     The Board Applies a Three-Part Test To Determine When Off-Duty-Access Rules Interfere with Section 7 Rights

Section 7 of the Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Section 8(a)(1) of the Act implements that guarantee by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1).

---

*infra* pp. 11-15), the Board applied a longstanding rule of law to determine that Amazon's off-duty-access policy violated the Act.

Employees' rights under Section 7 to engage in "self-organization" lie "at the very core of the purpose for which the [Act] was enacted." *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 206 n.42 (1978).  As has long been recognized, that core right "necessarily encompasses the right effectively to communicate with one another regarding self-organization at the jobsite." *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 491-92 (1978).  Indeed, the Supreme Court has observed that "the plant is a particularly appropriate place for the distribution of [Section] 7 material, because it 'is the one place where [employees] clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 574 (1978) (quoting *Gale Prods.*, 142 NLRB 1246, 1249 (1963)).

Applying that precedent and "[g]iven the centrality of employees' right to communicate with their fellow employees at their workplace on their own time and the 'particularly appropriate' nature of the workplace for exercising that right," the Board has reasoned that, "a rule prohibiting employees from being present at their workplace on their own time clearly trenches on their exercise of that fundamental right." *Saint John's Health Ctr.*, 357 NLRB 2078, 2081 (2011).  On the other hand, the Board is mindful of an employer's property interest in controlling access to its premises and accordingly weighs this interest against employees' Section 7

12

right and seeks "a proper accommodation between the two." *Hillhaven Highland House*, 336 NLRB 646, 649 (2001), *enforced*, 344 F.3d 523 (6th Cir. 2003) (internal citation and quotations omitted).

Nearly fifty years ago, in *Tri-County Medical Center*, 222 NLRB 1089 (1976), the Board announced that proper accommodation with respect to off-duty-employee access. To protect employees' core right to communicate and prevent undue interference with that right, the Board will find that an employer's access rule for off-duty employees is valid only if it: "(1) limits access solely with respect to the interior of the plant and other working areas; (2) is clearly disseminated to all employees; and (3) applies to off-duty employees seeking access to the plant for any purpose and not just to those employees engaging in union activity." *Id.* at 1089. Reviewing courts have approvingly cited the Board's *Tri-County* test. *See S. Md. Hosp. Ctr.*, 916 F.2d 932, 939-40 (4th Cir 1990) (affirming Board's use of *Tri-County* to evaluate lawfulness of disciplinary policy prohibiting "unauthorized presence" on hospital property); *NLRB v. Ohio Masonic Home*, 892 F.2d 449, 453 (6th Cir. 1989) (affirming Board's use of *Tri-County* test to evaluate lawfulness of prohibition on off-duty employees entering employer premises).

In *Saint John's Health*, the Board made plain that the *Tri-County* test "effectuates the Board's duty to accommodate these competing interests"—an employer's private property interest and employees' Section 7 rights. *Saint John's*

13

*Health*, 357 NLRB at 2081-83.  The Board reasoned that the third requirement—
that the rule apply to off-duty employees seeking access "for *any* purpose—tests
the strength and neutrality of the employer's legitimate interest: if off-duty
employee access is not sufficiently prejudicial to production or discipline to
warrant, in the employer's judgment, a uniform ban, neither does it warrant the
infringement of a fundamental statutory right."  *Id.*

### B. Amazon's Off-Duty-Access Rule Failed To Satisfy the Third Prong of *Tri-County*

With respect to the third prong of *Tri-County*, the Board has rejected rules
that generally prohibit off-duty employees' access but permit certain exceptions.
For instance, in *Saint John's Health*, the employer's general prohibition on off-
duty employees' access to most of the interior of the health center's building
contained an exception to allow employee access "to attend health-center-
sponsored events, such as retirement parties and baby showers."  357 NLRB at
2082.  The rule interfered with the exercise of Section 7 rights, the Board found,
because the broad exception "applies to any and all events sponsored by the
[employer]" and effectively tells employees, "you may not enter the premises after
your shift except when we say you can."  *Id.*  (footnote omitted).  Further, the
Board has routinely rejected no-access rules that allow undefined exceptions for
employee access with supervisory approval, reasoning that such policies give the
employer the "broad—indeed unlimited—discretion to decide when and why

14

employees may access the facility." *Piedmont Gardens*, 360 NLRB 813, 813
(2014); *accord S. Bakeries, LLC*, 368 NLRB No. 59, 2019 WL 4082690 *2 (Aug.
28, 2019) (finding rule against unauthorized access failed third prong of *Tri-County* because it gave employer unlimited discretion to determine when
employees may access facility); *Lytton Rancheria of Cal.*, 361 NLRB 1350, 1353
(2014) (finding rule that "provides for any additional access solely with
management's approval" failed third prong of *Tri-County* because it "effectively
vests management with unlimited discretion to expand or deny off-duty
employees' access for any reason it chooses"); *see also Ohio Masonic Home*, 892
F.2d at 453 (finding policy barring off-duty employees from entering employer
premises "to engage in publicly hostile or adverse confrontations" failed third
prong of *Tri-County* because it was not a uniform ban and was unduly vague
inasmuch as employees could not discern with any certainty what activities were
prohibited).

Here, the Board likened Amazon's off-duty-access rule to one allowing
unspecified exceptions based on undefined "supervisory approval." (R. 329 &
n.1.) In the Board's expert view, a rule reserving to Amazon the right to depart
from the policy "when deemed appropriate," thereby permitting or denying access
without limitation, is not meaningfully distinct from a rule requiring supervisory
authorization. (R. 329 & n.1.) Indeed, "[i]n each instance," the Board reasoned,

15

"unlimited discretion is vested in the employer to allow access as it sees fit." (R. 329.) Accordingly, the Board determined that Amazon's off-duty-access rule containing a limitless reservation of rights clause was unlawful.

### C. Amazon's Challenges to the Board's Finding that the Off-Duty-Access Policy Violates the Act Lack Merit

#### 1. Section 10(e) of the Act Bars the Court from considering Amazon's claim that the Board misinterpreted the Act

Amazon's opening salvo on the Board's decision—that the Board "misinterpreted the Act in this case" (Br. 21)—was not raised to the Board in Amazon's combined opposition to the General Counsel's motion for summary judgment and cross-motion for summary judgment. (*See* R. 251-256.) Throughout its opposition and cross-motion, Amazon argued that the case "concerns interpretation and application of the third prong [of *Tri-County*]" and a mischaracterization of the disclaimer. (R. 252.) Amazon never claimed that the violation in this case rests on a misinterpretation of Section 8(a)(1) of the Act. Consequently, the Court lacks jurisdiction to consider Amazon's newfound statutory-construction attack. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by

16

the court"); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66

(1982); *NLRB v. Alwin Mfg. Co.*, 78 F.3d 1159, 1162 (7th Cir. 1996).[3]

> **2.** **Notwithstanding the jurisdictional bar, Amazon wrongly maintains that there is no violation absent evidence of discrimination**

In any event, Amazon's contention that the Board's decision is not faithful

to the Act lacks merit. Amazon first claims that the absence of evidence showing

discrimination in the exercise of Section 7 rights (Br. 21-22) dooms the Board's

decision. Not so. The Board has long rejected the notion that invalid rules become

valid simply because there is no showing of enforcement. *Lexington Metal Prods.*

*Co.*, 166 NLRB 878, 879-80 (1967) ("Since the rule is presumptively invalid, it is

not for General Counsel to show that the rule was illegally motivated,

discriminatorily enforced, or enforced at all."); *Great Dane Trailers*, 293 NLRB

384, 387 (1989) ("A presumptively invalid [no-access] rule does not become valid

simply because there is no showing that it was enforced."); *Sassaquin Nursing &*

*Rehab. Ctr., Inc.*, 326 NLRB 6, 6 (1998) (no-access rule was facially invalid and

continued maintenance, without evidence of enforcement was unlawful).

---

[3] Amazon misfires by characterizing the Board's decision here as one of statutory construction—the Board applied long-standing precedent to the specific facts of this case. Moreover, Amazon never argued to the Board that its decision was infirm based on infidelity to the statutory language. Accordingly, Amazon's failure to raise this argument below means the Court need not determine the effect, if any, *Loper Bright* has on judicial review of Board cases involving an interpretation of the Act.

The Court endorses the Board's treatment of such arguments and
consistently recognizes that the Board is "entitled to conclude that [a workplace]
policy's *mere existence* amount[s] to an unfair labor practice because of the
likelihood it would chill protected concerted activity." *Contemporary Cars, Inc. v.
NLRB*, 814 F.3d 859, 873-74 (7th Cir. 2016) (emphasis added) (citation omitted);
*see also NLRB v. Gen. Thermodynamics, Inc.*, 670 F.2d 719, 721 (7th Cir. 1982)
("We have held that if an employer were to maintain an overbroad no-solicitation
rule it would violate Section 8(a)(1) of the Act even if there was no evidence that
the rule was enforced."); *Utrad Corp. v. NLRB*, 454 F.2d 520, 523 (7th Cir. 1971)
(finding that "mere existence of a broad no-solicitation rule may chill the exercise
of the employees' Section 7 right"); *S. Md. Hosp.*, 916 F.2d at 940 ("[n]othing in
the *Tri–County* rule implies that the Act is violated only if the employer was
successful in its barring of solicitation") (internal quotations and citation omitted).

> **3.   Notwithstanding the jurisdictional bar, Board precedent
> sufficiently explains why workplace rules that both prohibit
> off-duty access and permit exceptions based on unfettered
> employer discretion violate the Act; and the Board's
> decision here is consistent with that precedent**

Amazon raises (Br. 23, 28) a baseless, related contention—that the Board
did not explain how an off-duty-access rule that grants an employer unfettered
discretion to deny access to anyone at any time for any reason interferes with the
exercise of Section 7 rights. As discussed above (pp. 11-15), the Board detailed its

rationale in prior cases and may properly rely on that precedent as a discernible path to its decision in this case.[4]  *See*, *e.g.*, *Kable Printing Co. v. NLRB*, 545 F.2d 1079, 1086 (7th Cir. 1976) (enforcing order despite Board not discussing certain cases because Court determined that Board's "path may reasonably be discerned").

Further, contrary to Amazon's claim (Br. 23-28), the Board did not misinterpret its own precedent.  Rather, as shown above, the decision here is a straightforward application of the longstanding rule announced in *Tri-County* and based in the fundamental policies of the Act.  As the Board plainly explained, Amazon's off-duty-access policy "suffers from the same vice" as a workplace policy that contains "an exception, indefinite in scope" granting an employer the unfettered discretion to decide "when and why employees may access the facility." (R. 328-29, citing *Piedmont Gardens*, 360 NLRB at 813.)[5]  Amazon attempts to distinguish its rule from others found to be unlawful by asserting that its

---

[4] That the off-duty-access policy does not explicitly reference Section 7 activities (Br. 21) is irrelevant.  *See*, *e.g.*, *Saint John's Hosp.*, 357 NLRB at 2083 n.20 ("In fact, the rule [while not expressly prohibiting off-duty access for Section 7 purposes] prohibits off-duty access for all purposes except those specified in the rule; the exceptions, of course, do not include Sec[tion] 7 activity.").

[5] Given the Board's fealty to the decades-old *Tri-County* test and its reasonable application to standardless exceptions to a no-access policy, the Court should dismiss Amazon's assertion that the Board's decision is a product of "gestative propensity" stretching precedent beyond logic.  (Br. 27-28, citing *Stern Produce Co. v. NLRB*, 97 F.4th 1, 11 (D.C. Cir. 2024).)

"inadvertently placed disclaimer" only "existed for a mere eight days."[6]  (Br. 26-27.)  But Amazon invokes no authority suggesting that it should escape liability based on either benign intent or short duration.

Moreover, it seems that Amazon itself misunderstands the relevant precedent by—in the same breath—accusing the Board of a misguided "no exceptions whatsoever" approach under prong three of *Tri-County* (Br. 23, 29-37) while acknowledging Board precedent permitting limited exceptions under prong three (Br. 25).  For example, the Board has permitted exceptions to an employer's no-access rule where the rule treats off-duty employees like the public.  *See Sodexo Am., LLC*, 361 NLRB 927, 927 (2014) (exception to no-access policy for hospital employees to visit patients and receive medical treatment lawful because "they seek access not as employees, but as members of the public, and access is granted or denied on the same basis and under the same procedures as for the public"); *Marina Del Rey Hosp.*, 363 NLRB 231, 231-32 (2015) (same); *Caesars Entm't*, 362 NLRB 1690, 1691 n.4 (2015) (finding no-access policy lawful where manager authorization required for off-duty casino employees to access public areas of casino because "rules clearly speak to off-duty employees' *recreational use* of the

---

[6] The Board made no finding as to Amazon's intent regarding placement of the reservation of rights.  Violations of Section 8(a)(1) of the Act do not require intent. *See Brandeis Mach. & Supply Co. v. NLRB*, 412 F.3d 822, 830 (7th Cir. 2005) ("[n]o proof of coercive intent or effect is necessary") (quoting *Gen. Thermodynamics*, 670 F.2d at 721).

[] facilities as *guests*") (emphasis in original).  In *Piedmont Gardens*, the Board, rather than categorically rejecting any proffered exception, evaluated the employer's stated exceptions to a no-access policy but ultimately determined the employer failed to demonstrate that that the articulated exceptions were the *only* exceptions.  360 NLRB at 814.  The foregoing precedent illustrates the Board's willingness to consider and recognize, when needed, isolated exceptions to no-access policies.  But the Board had no need for any such consideration or recognition here because Amazon's policy contained no specific exceptions at all and, instead, contained a broad, all-encompassing exemption (the reservation of rights) in the rule itself.[7]

### 4.     Amazon relies on inapposite cases

Amazon relies on inapposite precedent (Br. 29-34) to assert that the Court has rejected the Board's [non-existent] no-exceptions approach.  It cites the following three cases:

- *Guardian Indus. Corp. v. NLRB*, 49 F.3d 317 (7th Cir. 1995): the Court found that an employer acted lawfully by refusing a request to post notices of union meetings on its bulletin board but permitting employees to post for-sale notices and personal announcements;

---

[7] In its persistent effort to fault the Board for a (nonexistent) "no exceptions whatsoever" approach, Amazon opines (Br. 35-36) on exceptions to a general no-access policy that may be, in fact, based on valid business justifications.  Amazon, however, did not see fit to write any of these bases into its policy, opting instead to reserve to itself the unbridled right to tell off-duty employees that they can enter the premises when it says they can.

- *Fleming Co. v. NLRB*, 349 F.3d 968 (7th Cir. 2000): the Court determined that an employer did not violate the Act by permitting employees to post personal notices on its bulletin board (notwithstanding a prohibition on posting any non-company material) but forbidding all organizational postings, including union postings; and

- *6 West Corp. v. NLRB*, 237 NLRB F.3d 767 (7th Cir. 2001): the Court found no discrimination where a restaurant employer permitted employees to solicit coworkers and customers by selling girl scout cookies, hand-made Christmas ornaments, and theater and raffle tickets, but prohibited employees from soliciting union support among coworkers.

(Br. 29, 31-33.) Most notably, none of these cases involves an employer's no-access rule where employees were barred from the "place uniquely appropriate and almost solely available to them [for self-organizational activity]." *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801 n.6 (1945). And the three cited cases involve very narrow, specific exceptions unlike the reservation of rights in Amazon's off-duty-access policy conferring upon itself broad, standardless discretion to suspend application of the rule for any reason it deems appropriate. The Board explained the significance of this distinction in *Saint John's Health*: "[A]d hoc exceptions made by the employer in its enforcement of an otherwise valid rule may support a finding of discriminatory enforcement, but an exception contained in the rule itself goes to the facial validity of the rule." 357 NLRB at 2083 n.21. Here, the issue is whether Amazon promulgated and maintained an unlawful no-access rule, not whether it enforced it in a discriminatory manner.

The foregoing cases have no bearing on the issue under review, and the Court should reject any claim that they demonstrate either error in the Board's decision or a difference in analytical approach between the Board and the Court.

For the same reason, and contrary to Amazon's urging (Br. 34-36), the Board's decision in *Register Guard*, 351 NLRB 1110 (2007), is likewise inapposite to this case. In *Register Guard*, the Board adopted a new framework for determining whether an employer has discriminatorily enforced a workplace policy—defining "unlawful discrimination" for purposes of discriminatory enforcement cases as "disparate treatment of activities or communications of a similar character because of their union or other Section 7-protected status." *Id.* at 1118. Again, the Board here found Amazon violated the Act by promulgating and maintaining the off-duty-access policy, *not* by discriminatorily enforcing that policy. Amazon's claims that *Register Guard* should apply here make no sense.

### D.    Amazon Failed To Carry Its Burden To Show that It Effectively Repudiated Its Unlawful Off-Duty-Access Rule

Under certain circumstances, an employer may attempt to avoid unfair-labor-practice liability by repudiating its prior unlawful conduct. The Board's established and judicially approved standard requires that "such repudiation must be 'timely,' 'unambiguous,' 'specific in nature to the coercive conduct,' and 'free from other proscribed illegal conduct.'" *Passavant Mem'l Area Hosp.*, 237 NLRB 138, 138 (1978); *see Cintas Corp. v. NLRB*, 589 F.3d 905, 915 (8th Cir. 2009);

*Sam's Club v. NLRB*, 141 F.3d 653, 661 (6th Cir. 1998). "[T]here must be adequate publication of the repudiation to the employees involved and there must be no proscribed conduct on the employer's part after the publication." *Passavant*, 237 NLRB at 138; *accord Cintas*, 589 F.3d at 915. Moreover, "such repudiation or disavowal of coercive conduct should give assurances to employees that in the future their employer will not interfere with the exercise of their Section 7 rights." *Passavant*, 237 NLRB at 138. An employer bears the burden of demonstrating effective repudiation. *See Boch Imports, Inc. v. NLRB*, 826 F.3d 558, 566 (1st Cir. 2016) (citing *Lily Transp. Corp.*, 362 NLRB 406, 408 (2015)).

The repudiation doctrine, which permits employers to avoid liability for violations of the Act, reflects the value the Board places on voluntary cooperation to achieve prompt remediation of unfair labor practices. *See Boch Imports, Inc.*, 362 NLRB 706, 706 n.3 (2015), *enforced*, 826 F.3d 558 (1st Cir. 2016). By effectively repudiating past misconduct, employers avoid expending resources to litigate their alleged violations. The Board, in turn, effectuates the policies of the Act, in the interest of the discriminatees and of the public, by efficiently ensuring prompt remediation of violations. But those policies are furthered only if, by accepting repudiation in lieu of adjudication, the Board ensures that the core remedial objectives of curing past—and preventing future—violations are satisfied. *See, e.g.*, *Webco Indus., Inc.*, 327 NLRB 172, 173 (1998) (repudiation doctrine

does more than restore parties to other's good graces, it protects employees from potential lingering effects of unfair labor practice, even though practice has been halted), *enforced*, 217 F.3d 1306 (10th Cir. 2000).  As the Board has explained, notice to employees that the employer violated their rights but will refrain from doing so in the future, "is a standard—and venerable—Board remedy and is virtually always required in settlements." *Id.*  Those fundamental remedial requirements are embodied in the *Passavant* criteria requiring notice and disavowal of the repudiated wrongdoing and assurance of future compliance with the Act.

Here, substantial evidence supports the Board's finding that Amazon failed effectively to repudiate its maintenance of the off-duty-access rule by simply issuing a revised rule omitting the reservation-of-rights language.  As the Board detailed (R. 329-30), Amazon failed to satisfy virtually every requirement for repudiation consistently identified in Board and court precedent.  Rather than disavow the unlawful provision and otherwise explain the revised policy to the employees, Amazon "merely advised employees that the initial rule contained unspecified 'language which has since been removed.'"  (R. 329.)  Amazon's action is insufficient.  *See Boch Imports*, 362 NLRB at 706 n.3 (repudiation ineffective without explanation of changes); *Lily Transp.*, 362 NLRB at 413-14 (repudiation ineffective where employer failed to explain to employees reason for

25

issuing revised handbook); *Casino San Pablo*, 361 NLRB 1350, 1353 (2014)

(repudiation ineffective where employer merely issued revised handbook omitting

unlawful provisions); *DaNite Sign Co.*, 356 NLRB 975, 981 (2011) (same).

Rather than admit to wrongdoing as required, Amazon declared to employees that

"[t]he substance of its policy had not changed." (R. 329.) Not only is this

declaration false inasmuch as a revision to remove unlawful language is hardly

"non-substantive," but the falsehood would also lead employees to conclude that

there was no problem in the first place. Under well-established precedent,

Amazon's action falls short of satisfying the repudiation doctrine. *See Boch

Imports*, 362 NLRB at 706 n.3 (repudiation ineffective without admission of

wrongdoing); *Rivers Casino*, 356 NLRB 1151, 1152 (2011) (no repudiation under

*Passavant* because employer did not admit wrongdoing); *Holly Farms Corp.*, 311

NLRB 273, 274 (1994) (same), *enforced*, 48 F.3d 1360 (4th Cir. 1995), *affirmed

on other grounds*, 517 U.S. 392 (1996); *Branch Int'l Servs.*, 310 NLRB 1092, 1105

(no repudiation under *Passavant* of employer's refusal to negotiate over grievances

where it did not acknowledge that refusal), *enforced*, 12 F.3d 213 (6th Cir. 1993).[8]

---

[8] Notably, Amazon's opening brief to the Court—a public document—professes
the opposite of any wrongdoing by persistently characterizing the unlawful policy
as inadvertent and unintended. The Board made no finding as to Amazon's
intentionality in maintaining the rule or the disclaimer, and Amazon's chosen
description further demonstrates its refusal to acknowledge any wrongdoing. *See*,
*e.g.*, *Rivers Casino*, 356 NLRB at 1152 (no repudiation where employer "did not

And rather than offer assurances to employees of their rights under the Act as they pertained to the revised off-duty-access rule, Amazon vaguely and without sufficient context notified employees that the revised rule would "not be enforced discriminatorily against employees engaged in protected activity." (R. 330 & n.5.) Amazon's ambiguous assurance attempt does not meet the specificity requirements of *Passavant*. *See Boch Imports*, 362 NLRB at 706 n.3 (repudiation ineffective where employer failed to offer assurances against future interference with Section 7 rights); *Lily Transp.*, 362 NLRB at 413-14 (same); *Casino San Pablo*, 361 NLRB at 1353 (same); *Wilson Trophy Co. v. NLRB*, 989 F.2d 1502, 1512 (8th Cir. 1993) (same).

Amazon's opening brief largely sidesteps the Board's rationale for finding that its repudiation effort fell short. It has thus waived any such argument for purposes of this appeal. *See NLRB v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 516 n.13 (7th Cir. 1991). Rather than engage with the Board's reasoning, Amazon simply repeats the (insufficient) steps it took and then maintains, without basis, that its efforts were good enough (Br. 38-39). It does not explain how it has satisfied the stringent repudiation requirements outlined in *Passavant* by ignoring its obligation to notify employees of the offending provision, refusing to admit to

---

admit any wrongdoing" and instead characterized a prior unlawful direction as a misunderstanding").

wrongdoing, and neglecting to assure employees that it will respect their rights in the future with regard to the policy.

Amazon's reliance on (Br. 37-38) *NLRB v. Intertherm, Inc.*, 596 F.2d 267 (8th Cir. 1979), and *Boch Imports* is counterproductive. The employer's effective repudiation in *Intertherm* underscores Amazon's woeful shortcomings here. In *Intertherm*, the supervisor individually apologized to unlawfully interrogated employees and admitted his wrongdoing, and the employer posted a public notice in multiple locations that explained the incident, indicated it was against company policy, assured employees it would not re-occur, informed employees of the supervisor's apology and his discipline, and included a comprehensive listing of employee rights under the Act. 596 F.2d at 276. And the employer's inadequate repudiation in *Boch Imports* bears striking similarities to Amazon's conduct. In *Boch Imports*, the First Circuit upheld the Board's finding that the employer's repudiation was inadequate because the employer "did nothing more in terms of notification than to provide copies of the revised handbook to employees." 826 F.3d at 567.[9]

---

[9] Amazon misrepresents (Br. 38) both the holding of *Boch Imports* and the concurring judge's view. As noted above and contrary to Amazon's contention, the First Circuit *upheld* the Board's finding of inadequate repudiation, and the concurring judge joined in that decision. *See Boch Imports*, 826 F.3d at 578 ("I agree [with the majority] that the Board did not err in finding a lack of adequate repudiation.") (Stahl, J., concurring). Further, in his concurrence, Judge Stahl does *not*—contrary to Amazon's characterization (Br. 38)—fault the Board for a hyper-

In short, Amazon conflates rescission with repudiation. *See Boch Imports*, 826 F.3d at 578 ("There is a difference between arguing that you have implicitly satisfied individual *Passavant* factors and arguing that the mere cessation of an ongoing violation constitutes an 'implicit' repudiation. Such an interpretation would make the very concept of repudiation meaningless.") (J. Stahl, concurring). Substantial evidence supports the determination that Amazon's simple act of publishing a revised rule did not satisfy the core criteria for effective repudiation under *Passavant* or further the remedial policies underlying those requirements.

### E.  Amazon's Public Policy Argument Provides No Basis To Deny Enforcement

Finally, having committed a black-letter-law violation of the Act, as we have just shown, Amazon ironically seeks to avoid liability by arguing that the Board's "strained resources" would be better used against other wrongdoers. (Br. 40.) Notably, Amazon does not take issue with the Board's rationale not to "dismiss as insignificant that, according to [Amazon's] calculations, at least some 200 employees viewed the unlawful rule." (R. 330.) Having failed to challenge the Board's reasoning that the policy had more than a de minimis effect on employee rights, Amazon has waived any such claim and may not raise it in a reply brief.

---

technical approach or accuse the Board of squandering its own and the employer's resources and misspending taxpayer funds. Rather, Judge Stahl voices agreement with the dissenting Board member's warning about possible issues in future cases. *Id.* at 578 n.16.

29

*See P*I*E Nationwide*, 923 F.2d at 516 n.13.  Further, Amazon cites no authority for the notion that a court should deny enforcement of a meritorious unfair-labor-practice finding that vindicates public rights because the Board is understaffed or underfunded or because the respondent views its own violation as undeserving of a remedy.  It is for the Board to set its own priorities, develop overall litigation strategies for the agency, and determine whether to pursue certain remedies.

Lastly, the Court should reject Amazon's claim that because it has revised the rule, this "already-remedied matter is not an efficient use of agency resources." (Br. 40.)  As the Court has observed, the Board has reasonably concluded that requiring an employer "to post a notice regarding the change in its [workplace] rule will carry more impact in informing employees of their rights and effectuating the policies of the Act than the [employer's] muted removal of the rules."  *Gen. Thermodynamics*, 670 F.2d at 722; *accord Utrad*, 454 F.2d at 524 (posting notice regarding workplace rule change "will carry more impact in informing employees of their rights than merely passing out a revised handbook page").  And Amazon "should not object to this opportunity to make its position clear."  *Utrad*, 454 F.2d at 525.  If the Court does nothing, "employees would be left to acting at their peril because they would not be certain that the rules had no application."  *Gen. Thermodynamics*, 670 F.2d at 722.  As the Court acknowledged in similar circumstances, refusing to enforce the Board's order "would mean that [the

employer's] muted removal of the illegal rules could preclude the Board from ordering remedial orders to be posted, even though the section 7 rights of employees had been chilled."[10]  *Id.*

_____

[10] Amazon's portrayal of this case as trivial and one-off further rings hollow where it is another instance of its issuance of an unlawful off-duty-access policy.  Indeed, the Board found that Amazon's conduct in this case violated a settlement reached in a prior case involving similar off-duty-access rules and coercive activity related to the enforcement of the work rules at several other locations.  *Amazon.com Servs., LLC*, 373 NLRB No. 96, 2024 WL 4164482 (Sep. 10, 2024), *petition for review filed*, Case No. 24-2660 (7th Cir. Sep. 20, 2024).  At the very least, this case has consequences for another that is pending before the Court.

## CONCLUSION

The Board respectfully requests that the Court deny the petition for review

and enforce the Board's Order in full.

s/ Usha Dheenan
USHA DHEENAN
*Supervisory Attorney*

s/ Barbara A. Sheehy
BARBARA A. SHEEHY
*Attorney*
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-2948
(202) 273-0094

JENNIFER A. ABRUZZO
    *General Counsel*

PETER SUNG OHR
    *Deputy General Counsel*

RUTH E. BURDICK
    *Deputy Associate General Counsel*

DAVID HABENSTREIT
    *Assistant General Counsel*

NATIONAL LABOR RELATIONS BOARD

OCTOBER 2024

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| AMAZON.COM SERVICES, LLC | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | Nos. 24-1548, 24-1619 |
| | ) | |
| v. | ) | Board Case No. 09-CA-298870 |
| | ) | |
| NATIONAL LABOR RELATIONS | ) | |
| BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2), the Board

certifies that this motion contains 7076 words of proportionally spaced, 14-point

type, and the word processing system used was Microsoft Word 2010.


/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street SE
Washington, DC  20570-0001
(202) 273-2960

Dated at Washington, DC
this 4th day of October 2024

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| AMAZON.COM SERVICES, LLC | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | Nos. 24-1548, 24-1619 |
| | ) | |
| v. | ) | Board Case No. 09-CA-298870 |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, I filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.  I certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street SE
Washington, DC  20570-0001
(202) 273-2960

Dated at Washington, DC
this 4th day of October 2024