Nos. 24-1548 and 24-1619

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

## Amazon.com Services LLC

Petitioner/
Cross-Respondent

v.

## National Labor Relations Board

Respondent/
Cross-Petitioner

Petition for Review and Cross-Application for Enforcement
of a Decision and Order of the National Labor Relations Board

### REPLY BRIEF OF PETITIONER/CROSS-RESPONDENT

Brian Stolzenbach
Harrison C. Kuntz
SEYFARTH SHAW LLP
233 S. Wacker Drive, #8000
Chicago, Illinois 60606
Ph:    (312) 460-5000
Fax:   (312) 460-7000
bstolzenbach@seyfarth.com
hkuntz@seyfarth.com

*Counsel for Petitioner/Cross-Respondent*

◆◆

**October 25, 2024**

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT .............................................................................. 1

ARGUMENT ........................................................................................................ 4

    I.    *Loper Bright* requires the Court to interpret the Act without deference to the Board's construction. ................................................... 4

        A.    Case law in other Circuits supports application of *Loper Bright* to the Board's statutory interpretations, and this Court has not held otherwise. .................................... 4

        B.    Denial of deference to the Board under *Loper Bright* is appropriate because the Board's statutory interpretations result from political oscillation, not specialized subject matter expertise. ........................................ 6

    II.    Amazon is not barred from raising statutory construction arguments ................................................................................. 9

    III.    Standards for judging discriminatory treatment necessarily apply to facial policy challenges under the third prong of the Board's *Tri-County* test. ....................................................... 12

    IV.    Because the Board admits its own case law permits exceptions to off duty access policies, the Board should have found the language challenged in this case to be lawful. ................ 15

    V.    An admission of wrongdoing is not required for effective repudiation. ........................................................................... 18

    VI.    Public policy factors are relevant considerations in the Court's application of law to factual circumstances. ........................ 22

CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*6 West Corp. v. NLRB,*
  237 F.3d 767 (7th Cir. 2001), *denying enf. to* 330 NLRB 527 (2000) ...............14, 15

*Auer v. Robbins,*
  519 U.S. 452 (1997)....................................................................................................5

*Bernardo-De La Cruz v. Garland,*
  114 F.4th 883 (7th Cir. 2024)....................................................................................5

*Chevron U.S.A., Inc. v. NRDC,*
  467 U.S. 837 (1984)...............................................................................................4, 7

*Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.,*
  107 F.4th 768 (7th Cir. 2024) ...................................................................................5

*Dallas Mailers Union, Loc. No. 143 v. NLRB,*
  445 F.2d 730 (D.C. Cir. 1971)..................................................................................23

*ExxonMobil Research and Engineering Co.,*
  372 NLRB No. 138 (2023) ..................................................................................19, 21

*Fleming Co. v. NLRB,*
  349 F.3d 968 (7th Cir. 2003), *denying enf. to* 336 NLRB 192 (2001) ...............14, 15

*GCIU v. NLRB,*
  572 F.3d 342 (7th Cir. 2009) ..............................................................................9, 10

*Good Samaritan Med. Ctr. v. NLRB,*
  858 F.3d 617 (1st Cir. 2017)....................................................................................20

*Guardian Industries Corp. v. NLRB,*
  49 F.3d 317 (7th Cir. 1995), *denying enf. to* 313 NLRB 1275 (1994) ...............14, 15

*Hudson Inst. of Process Rsch. Inc. v. NLRB,*
  No. 23-60175, 2024 WL 4222177 (5th Cir. Sept. 18, 2024)......................................6

*International Union of Operating Eng'rs v. NLRB,*
  109 F.4th 905 (7th Cir. 2024) ...................................................................................5

*J.W. Marriott Los Angeles at L.A. Live,*
  359 NLRB 144 (2012) ........................................................................8, 9

*Loper Bright Enterprises v. Raimondo,*
  144 S. Ct. 2244 (2024)...................................................................... *passim*

*Lytton Rancheria of California,*
  361 NLRB 1350 (2014) ................................................................8, 9, 17

*Marina Del Rey Hospital,*
  363 NLRB 231 (2015) ...........................................................................13

*Midthun-Hensen on behalf of K.H. v. Grp. Health Coop. of S. Cent.*
  *Wisconsin, Inc.,*
  110 F.4th 984, 988 (7th Cir. 2024) .......................................................5

*Naples Community Hospital, Inc.,*
  355 NLRB 964 (2010) ...........................................................................13

*NLRB v. Gen. Thermodynamics, Inc.,*
  670 F.2d 719 (7th Cir. 1982) ...............................................................24

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937).....................................................................................23

*NLRB v. Macomb,*
  No. 23-1335, 2024 WL 4240545 (6th Cir. Sept. 19, 2024).......................6

*NLRB v. Magna Corp.,*
  734 F.2d 1057 (5th Cir. 1984) ..............................................................20

*NLRB v. Noel Canning,*
  573 U.S. 513 (2014) .................................................................................8

*NLRB v. Ohio Masonic Home,*
  892 F.2d 449 (6th Cir. 1989) ...............................................................17

*NLRB v. P*I*E Nationwide, Inc.,*
  923 F.2d 506 (7th Cir. 1991) ...............................................................19

*NLRB v. Winnebago Television Corp.,*
  75 F.3d 1208 (7th Cir. 1996) ...............................................................23

*Passavant Mem'l Area Hosp.*,
    237 NLRB 138 (1978) ...............................................................19, 21, 22

*Piedmont Gardens*,
    360 NLRB 813 (2014) .......................................................................8, 9

*Randell Warehouse of Arizona, Inc. v. NLRB*,
    252 F.3d 445 (D.C. Cir. 2001) ..............................................................20

*Republic Aviation Corp.* v. NLRB,
    324 U.S. 793 (1945) ...........................................................................14

*Rieth-Riley Constr. Co. v. NLRB*,
    114 F.4th 519 (6th Cir. 2024) ................................................................6

*Roundy's Inc. v. NLRB*,
    674 F.3d 638 (7th Cir. 2012) ................................................................11

*S. Bakeries, LLC*,
    368 NLRB No. 59 (2019) .....................................................................17

*Saint John's Health Center*,
    357 NLRB 2078 (2011) ..........................................................................8

*Sodexo Am. LLC*,
    358 NLRB 668 (2012) ............................................................................8

*Sodexo Am., LLC*
    361 NLRB 927 (2014) ...........................................................................13

*Springfield Hospital*,
    281 NLRB 643 (1986) ...........................................................................13

*Stern Produce Co., Inc. v. NLRB*,
    97 F.4th 1 (D.C. Cir. 2024) ...................................................................23

*TBC Corp.*,
    367 NLRB No. 18 (2018) ......................................................................19

*Tri-County Medical Center*,
    222 NLRB 1089 (1976) .................................................................. *passim*

*United States v. Ponle,*
   110 F.4th 958 (7th Cir. 2024) ...........................................................................5

**Statutes**

29 U.S.C. § 158(a)(1) ............................................................................... *passim*

29 U.S.C. § 160(e) ...........................................................................................9

## <u>SUMMARY OF THE ARGUMENT</u>

The Board's brief, like its Decision and Order, is based on internally contradictory legal assertions and is unmoored from the statute the Board has been appointed to enforce. In its brief, the Board concedes that employers may lawfully make exceptions to their off duty access policies and disavows the notion that it requires a "no exceptions whatsoever" approach to such policies. Yet the Board simultaneously argues that Amazon violated the law merely because a single boilerplate sentence briefly appeared on one version of its Off Duty Access Policy, and that sentence generally noted Amazon's right to make exceptions to the policy if appropriate. There are other flaws in the Board's position, but this central irreconcilable contradiction is more than sufficient basis for the Court to grant Amazon's petition for review. This major inconsistency also illustrates a broader, more fundamental problem with the Board's approach to off duty access. Its approach in this area of law, as in so many others, is based increasingly on convoluted attempts to fit its policy preferences into the framework of its own prior case law, rather than seeking fidelity to the statutory text it is charged to enforce. Simply put, there is no reasonable basis for the Board's conclusion that a basic statement about Amazon's right to make appropriate exceptions to a lawful off duty access rule did anything to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7 of the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1).

Accordingly, the Court should grant Amazon's petition for review and deny the Board's cross-application for enforcement.

Seeking to insulate its legal reasoning from judicial review, the Board begins its response to Amazon's arguments by asserting that the Court has already declared *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), to be inapplicable in Board cases. The Board is wrong about this. The Court has made no such pronouncement, and the Court is obligated to abide by the Supreme Court's instruction to grant administrative agencies, such as the Board, no deference in matters of statutory construction.

That said, even under the historical approach that granted more deference to the Board, the agency's construction of the Act in this case is not tenable. Asserting the irrelevance of both the Court's and the Board's own standard for assessing whether workplace polices unlawfully infringe upon protected activities, the Board speculates that a policy hypothetically allowing for the possibility of exceptions would necessarily allow for future discriminatory application of the policy. But this makes no logical sense, given the Board's own *admission* in its brief that employers may lawfully make some exceptions to their off duty access policies.

The Board's internally contradictory assertions cannot withstand scrutiny, especially when compared to the lodestar here—the statutory provision the Board is supposed to be enforcing. Section 8(a)(1) of the Act prohibits actions that

2

"interfere with, restrain, or coerce employees in the exercise of" their statutory rights. Mere speculation about how an employer theoretically could have exercised its reserved discretion during a short eight-day period does not demonstrate any such interference, restraint, or coercion. In fact, it is impossible to imagine how any employee, if they even saw it, could have read the allegedly unlawful one-sentence reservation of rights and thought anything about the exercise of rights under the Act, much less thought that those rights were being impinged.

This Board's conclusion in this case is particularly difficult to comprehend, given the undisputed facts. Only eight days after the challenged language inadvertently appeared on the policy, in only one location, Amazon wrote to all its employees, advising them that the language had been removed, providing them with a link to the policy without the language, and explicitly assuring them that the policy would not be applied discriminatorily against protected activities. Even if the boilerplate reservation of rights had somehow created a technical violation of the Act, Amazon's corrective communication would have cured the problem entirely. Contrary to the Board's brief, an admission of wrongdoing is not required for an employer to cure a prior violation of the Act, even under the Board's own longstanding standard for effectively repudiating a violation.

Against all this background, the Board's continued maintenance of this case constitutes a wasteful use of public resources. The Board advances neither the

3

Act nor its purposes by imagining every way in which employers can theoretically misuse reserved discretion, and then pursing legal proceedings against such reservations, even where the challenged language is quickly rescinded upon discovery. The Court should not countenance such poor public policy. On the contrary, the Court should examine the language of the statute, as required under *Loper Bright*, and correctly conclude that Amazon's actions did nothing to violate the Act. Amazon respectfully requests that the Court grant its petition for review and deny the Board's cross-application for enforcement.

## ARGUMENT

I.     ***Loper Bright* requires the Court to interpret the Act without deference to the Board's construction.**

A.     **Case law in other Circuits supports application of *Loper Bright* to the Board's statutory interpretations, and this Court has not held otherwise.**

The Supreme Court's decision in *Loper Bright* (overruling *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984)) requires the Court to grant the Board no deference on matters of statutory interpretation. Although the Board suggests that the Court has previously rejected application of *Loper Bright* to NLRB cases, this is simply not true.

Using the plural tense, the Board claims: "The Court's post-*Loper Bright* adherence to these [pre-*Loper Bright*] principles in case**s** arising from the Board is consistent with that longstanding approach." Dkt. 26 at 10 (emphasis added).

The Board then proceeds to cite only a single case in support of the assertion that the Court has rejected *Loper Bright*'s application to this particular administrative agency: *International Union of Operating Eng'rs v. NLRB*, 109 F.4th 905, 914 (7th Cir. 2024).

In fact, since the issuance of *Loper Bright*, the Court has cited *Loper Bright* in only four decisions, none of which involved the Board: *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 775 n.15 (7th Cir. 2024) (applying *de novo* review to claims under the Equal Credit Opportunity Act); *United States v. Ponle*, 110 F.4th 958, 961 n.3 (7th Cir. 2024) (addressing issues of deference under *Auer v. Robbins*, 519 U.S. 452 (1997), and contrasting such deference to the *Chevron*/*Loper Bright* line of cases); *Midthun-Hensen on behalf of K.H. v. Grp. Health Coop. of S. Cent. Wisconsin, Inc.*, 110 F.4th 984, 988 (7th Cir. 2024) (stating that *Loper Bright* analysis need not be undertaken in that case because there was no contention that the applicable ERISA regulations were invalid); *Bernardo-De La Cruz v. Garland*, 114 F.4th 883, 890 (7th Cir. 2024) (applying *Loper Bright* to regulations promulgated under the Immigration and Nationality Act).

Turning then to the sole case cited by the Board, the Court in *Operating Engineers* actually did not mention *Loper Bright* at all. The *Operating Engineers* decision issued on July 23, 2024, less than a month after the Supreme Court's June 28, 2024 decision in *Loper Bright*. And there is no indication that either party in *Operating Engineers* briefed or argued *Loper Bright*'s impact on the appropriate

standard of review. Certainly, the Court did not confront the question in its

opinion. Consequently, the Court still has not addressed the impact of *Loper*

*Bright*'s on the standard of review in Board cases.

In contrast, both the Fifth and Sixth Circuits have specifically confronted the

question, and both have agreed that the Courts of Appeals owe the Board no

deference in matters of statutory interpretation. Citing *Loper Bright*, the Fifth

Circuit explained, "we do not simply defer to an agency's interpretation of

'ambiguous' provisions of their enabling acts." *Hudson Inst. of Process Rsch. Inc. v.*

*NLRB*, No. 23-60175, 2024 WL 4222177, *4 (5th Cir. Sept. 18, 2024). Similarly, in

reliance on *Loper Bright*, the Sixth Circuit has determined: "We do not defer to the

NLRB's interpretation of the NLRA, but exercise independent judgment in

deciding whether an agency acted within its statutory authority." *Rieth-Riley*

*Constr. Co. v. NLRB*, 114 F.4th 519, 528 (6th Cir. 2024); *see also NLRB v. Macomb*,

No. 23-1335, 2024 WL 4240545, *7 (6th Cir. Sept. 19, 2024) ("we no longer owe

deference to the agency's interpretation of the Act") (citing *Rieth-Riley*

*Construction*, 114 F.4th at 528).

> **B.    Denial of deference to the Board under *Loper Bright* is appropriate because the Board's statutory interpretations result from political oscillation, not specialized subject matter expertise.**

Further, the Board offers no viable reason to question any of the reasons

Amazon has advanced for denying deference to the Board's statutory

interpretation, consistent with *Loper Bright*. Specifically, while the Board argues

that deference to its statutory interpretation pre-dates the now-defunct *Chevron* standard, Dkt. 26 at 10, pre-*Chevron* deference was based on the concept of agency expertise and was thus merely a precursor to *Chevron*. The rationale of *Loper Bright* therefore applies to pre-*Chevron* deference standards with equal force as it applies to *Chevron* itself.

The Board also does not dispute that recent politically driven oscillations in the Board's standards make such deference especially inappropriate for this agency. Dkt. 21 at 15-20. These reasons to deny deference comport with the Supreme Court's pronouncement in *Loper Bright* that, "even when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given it to the agency. Congress expects courts to handle technical statutory questions." 144 S. Ct. at 2267.

Accordingly, the Court can ensure faithfulness to *Loper Bright* (as well as agreement with the only two other Circuits to speak on this issue) only by concluding that it owes the Board no deference on matters of statutory interpretation. This standard of review will also help protect against incremental devolutions away from statutory language, and toward an agency's own vacillating political views, such as witnessed in this case.

In fact, the verbiage in the Board's own brief highlights the pressing need to rein in the Board's unconstrained treatment of the Act's provisions. The Board

argues: "Amazon misfires by characterizing the Board's decision here as one of statutory construction—the Board applied long-standing precedent to the specific facts of this case." Dkt. 26 at 17 n.3. This assertion strikes at the heart of the Supreme Court's rationale in *Loper Bright*. The Board implicitly acknowledges that its approach here has nothing to do with the actual statutory language and instead is justified only by reference to its own prior decisions. But by ignoring the statutory language, and instead myopically focusing only on the incremental creep away from the Act created by increasingly expansive interpretations of its own case law, the Board has lost sight of the mandate with which Congress entrusted it. The *Loper Bright* standard operates as a bulwark against precisely such agency attitudes.

The Court should therefore afford the Board no deference in matters of statutory interpretation, not only because *Loper Bright* requires such an approach, but also because it is necessary to curb the overreaches of an agency whose political fluctuations routinely carry it far beyond the statute's limits.[1]

---

[1] The Board's Brief suggests that its finding of a violation results merely from the application of "long-standing precedent" involving the third prong of the *Tri-County* test and managerial reservations of discretion. Dkt. 26 at 17 n.3. In fact, the broad view the Board relies upon took root only about a decade ago. *See Saint John's Health Center*, 357 NLRB 2078 (2011); *Sodexo Am. LLC*, 358 NLRB 668 (2012) (vacated, 361 NLRB at 927, pursuant to *NLRB v. Noel Canning*, 573 U.S. 513 (2014)); *J.W. Marriott Los Angeles at L.A. Live*, 359 NLRB 144 (2012); *Piedmont Gardens*, 360 NLRB 813 (2014); *Lytton Rancheria of California*, 361 NLRB 1350 (2014). Notably, this expansive approach routinely provoked dissenting opinions by the Republican minority participating in the decisions. *See Saint John's Health Center*, 357 NLRB at 2086-88 (Hayes, dissenting); *Sodexo*, 358 NLRB at 670-

## II.     Amazon is not barred from raising statutory construction arguments.

The Board broadly contends that Amazon has waived its ability to argue that "the violation in this case rests on a misinterpretation of Section 8(a)(1) of the Act." Dkt. 26 at 16-17 (citing 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court"); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982); *NLRB v. Alwin Mfg. Co.*, 78 F.3d 1159, 1162 (7th Cir. 1996)). This waiver claim ignores the fundamental nature of the Board's findings, as well as the arguments Amazon actually advanced to the Board.

To begin with, Amazon could not waive a legal argument engendered in the first instance by the Board's own flawed legal reasoning in its Decision and Order—a decision the Board issued on a motion for summary judgment, without the benefit of an evidentiary hearing. That is not what Section 10(e) of the Act is about. *See Local 65-B, GCIU v. NLRB*, 572 F.3d 342 (7th Cir. 2009). In *Local 65-B*, the Board claimed the union waived an argument that the Board erroneously overruled its own precedent *sub silentio. Id.* at 350. The Court disagreed and

---

71 (Hayes, dissenting); *J.W. Marriott Los Angeles at L.A. Live*, 359 NLRB at 148 (Hayes, dissenting); *Lytton Rancheria of California*, 361 NLRB at 1360 (Johnson, dissenting); *Piedmont Gardens*, 360 NLRB at 813 n.4 (Miscimarra, dissenting). Now, as the current case demonstrates, under another Democratic administration the Board has returned to its Obama-era approach. Simply put, the Board's Decision and Order is not the product of ancient legal principles but instead provides yet another example of politically driven policy oscillation at this particular agency.

reasoned: "The union obviously had no way of knowing that the Board would
(in their view) overrule its precedent prior to the final decision." *Id.*

At any rate, the central issue in this case has always been, and must be,
whether Amazon's actions violated the statute. Indeed, it is, or should be,
overwhelmingly obvious that every Board unfair labor practice determination
implicates interpretation of the Act. That is especially true in this case, which was
decided on a motion for summary judgment, such that the Board did not purport
to resolve any factual issues. As a result, every argument Amazon advanced to
the Board in this case was tethered directly to the simple question of whether the
NLRB's General Counsel was advocating a correct legal construction of the Act.

In fact, every argument about the *Tri-County* test, whether a criticism of the
test itself or a critique of the Board's application of the test, is inherently an
argument about the meaning of the Act. *Compare Tri-County Medical Center*, 222
NLRB 1089, 1089 (1976) (prefacing its newly announced standard for judging off
duty access rules by explaining that the standard's purpose is "to prevent undue
interference with the rights of employees under Section 7 of the Act") *with* 29
U.S.C. § 158(a)(1) (prohibiting actions that "interfere with, restrain, or coerce
employees in the exercise of the rights guaranteed by [Section 7 of the Act]"). The
question of the proper application of *Tri-County* and the proper interpretation of
the Act are inextricably intertwined.

Regardless, Amazon repeatedly and explicitly argued to the Board in opposition to summary judgment that the NLRB's General Counsel was advocating an interpretation of *Tri-County* that was "wrong" and that her "interpretation and application of the *Tri-County* three-part test [was] incorrect," precisely because her proposed interpretation did "not fulfill the purposes of the Act." R. 252, 253. Indeed, Amazon specifically argued that "[i]nterpreting the third prong of *Tri-County* to prohibit any and all ability for an employer to make exceptions to off duty access prohibitions ***would stretch the Act beyond its reasonable boundaries.***" (*Id.* at 255 (emphasis added).) Yet this is exactly what the Board's Decision and Order effectively concludes.

So there can be no doubt that Amazon challenged the interpretation of the Act advocated by the NLRB's General Counsel in this case. As a result, the Board was fully aware of Amazon's position that its adoption of the General Counsel's arguments would constitute an incorrect interpretation of the Act. Accordingly, no such argument has been waived. *See Roundy's Inc. v. NLRB*, 674 F.3d 638 (7th Cir. 2012). In *Roundy's*, the Board claimed that an employer had waived its own argument that the NLRB's General Counsel had waived a burden of proof issue. *Id.* at 646 n.2. The Court rejected the Board's waiver argument, explaining: "The Board was aware of [the employer's] position that the General Counsel had waived the [ ] theory; the Board disagreed." Likewise, in this case, the Board was

plainly aware of Amazon's position that the challenged language did not violate the Act and that any decision to the contrary would be inconsistent with the Act.

The Board disagreed, and Amazon now seeks the Court's relief from that erroneous decision. Consequently, the Board's waiver argument should be rejected.

## III.   Standards for judging discriminatory treatment necessarily apply to facial policy challenges under the third prong of the Board's *Tri-County* test.

Several of the Board's contentions in its brief attack straw men erected by misconstructions of Amazon's arguments. In particular, the Board mischaracterizes Amazon as arguing that evidence of actual discrimination is required for a work rule to be found unlawful. Dkt. 26 at 17-18. Amazon has advanced no such broad contention and instead points out that standards for judging discriminatory treatment are necessarily relevant to evaluations under *Tri-County*'s third prong: a valid policy must "appl[y] to off-duty employees seeking access to the plant for any purpose and not just to those employees engaging in union activity." 222 NLRB at 1089-90. Additionally, the Board unsuccessfully attempts to push away the Court's prior admonishments that the Board must evaluate discriminatory treatment based on comparisons among like activities. Dkt. 26 at 21-23. Such attempts fail because the Board's own *Tri-County* standard relies on the concept of non-discrimination.

The Board cannot explain how it or the Court could possibly evaluate that third prong without reference to standards for discrimination. Indeed, many of the Board's cases applying *Tri-County* find violations based on conclusions that an employer, in practice, permitted access for reasons the Board (whether correctly or not) deemed comparable to access for Section 7 purposes. *See, e.g.*, *Marina Del Rey Hospital*, 363 NLRB 231, 232 (2015) (finding off duty access policy unlawful because "the Respondent permitted off-duty employees to enter the Hospital for a variety of reasons unrelated to union activity (such as picking up paystubs, submitting scheduling requests, applying for a transfer, and attending social events such as retirement parties and wedding or baby showers)"); *Springfield Hospital*, 281 NLRB 643, 668 (1986) (finding third prong of *Tri-County* not satisfied because "during the campaign, and until the time of the hearing before [the Administrative Law Judge], the Respondent permitted off-duty employees to return to its building for a variety of purposes other than union activity"); *Naples Community Hospital, Inc.*, 355 NLRB 964, 1005 (2010) (finding a violation because "the policy regarding off-duty employees has been ignored by Respondent, except to the extent that it is being used to prevent off-duty nurse organizers from [engaging in union activities]").

The Board cannot consistently argue on one hand that Amazon violated the Act because the challenged boilerplate language created the possibility of discriminatory use of managerial discretion while on the other hand asserting

that standards for assessing discriminatory treatment are irrelevant. Its attempt to walk such a tightrope plainly arises from the reality that the Court's standards do not support its approach to discrimination under *Tri-County*'s third prong. *Guardian Industries Corp. v. NLRB*, 49 F.3d 317 (7th Cir. 1995*), denying enf. to* 313 NLRB 1275 (1994); *Fleming Co. v. NLRB*, 349 F.3d 968 (7th Cir. 2003), *denying enf. to* 336 NLRB 192 (2001)*; 6 West Corp. v. NLRB*, 237 F.3d 767 (7th Cir. 2001), *denying enf. to* 330 NLRB 527 (2000); *see also* further discussion at Dkt. 21 at 29-33.

The Board would therefore prefer that the Court simply set those standards aside and treat facial challenges to policies as something entirely separate, notwithstanding that the Board's own standard for assessing policy language is rooted in the concept of discrimination. The Act provides no basis for the Court take such a myopic approach to the Board's decisions.

Likewise, the Board seeks to support this segmented approach to work rule issues by creating a distinction without a difference. In response to Amazon's reliance on *Guardian*, *Fleming*, and *6 West*, the Board argues, "none of these cases involves an employer's no-access rule where employees were barred from the 'place uniquely appropriate and almost solely available to them [for self-organizational activity].'" Dkt. 26 at 22 (quoting *Republic Aviation Corp.* v. NLRB, 324 U.S. 793, 801 n.6 (1945)). The Board identifies no reason, however, why the Court should review access rules differently than other types of rules. Each of *Guardian*, *Fleming*, and *6 West* pertains to protected activities occurring at the

workplace. *Guardian*, 49 F.3d at 322 (analyzing the employer's "bulletin board access policy"); *Fleming*, 349 F.3d at 974 (analyzing bulletin board limitations contained in employee handbook); *6 West*, 237 F.3d at 780 (analyzing solicitation policy). No ascertainable reason exists for the Court to assess facility access discrimination issues differently from the standard for discriminatory treatment of activities undertaken while at that facility.

The Board's finding of a violation in this case rests upon its determination that Amazon's purported reservation of discretion, by creating the possibility of discriminatory application of such discretion, violated the third prong of its *Tri-County* standard. R. 328. It cannot now credibly claim that standards for assessing whether discriminatory treatment exists have no relevance to the validity of its findings. This Court's prior rejections of Board attempts to compare dissimilar activities for the purpose of discrimination also doom this attempt to find fault with hypothetical discrimination based on a purported reservation of discretion. The Court should therefore apply its precedent to find Amazon did not violate the Act.

## IV. Because the Board admits its own case law permits exceptions to off duty access policies, the Board should have found the language challenged in this case to be lawful.

The Board's brief contains an astounding admission in light of its findings in this case: the Board denies that it utilizes a "no exceptions whatsoever" approach to the third prong of its *Tri-County* standard and even points out that some Board

cases have countenanced certain exceptions. Dkt. 26 at 20-21 (citing *Sodexo Am., LLC*, 361 NLRB 927, 927 (2014); *Marina Del Rey Hosp.*, 363 NLRB 231, 231-32 (2015); *Caesars Entm't*, 362 NLRB 1690, 1691 n.4 (2015); *Piedmont Gardens*, 360 NLRB 813, 814 (2014)). This critical concession obliterates the fundamental basis upon which the Board found a violation in this case.

As noted above, to the extent the Board explained its rationale at all, it rested its conclusion on the mere *possibility* that Amazon could discriminatorily use language reserving itself discretion to make exceptions. R. 328. By acknowledging that some exceptions are permissible, the Board implicitly admits that its claim of a violation depends on an *assumption* that Amazon will make discriminatory future decisions.

At one point in its brief, the Board faults Amazon for "not see[ing] fit to write any of these [exceptions] into its policy, opting instead to reserve to itself the unbridled right to tell off-duty employees that they can enter the premises when it says they can." Dkt. 26 at 21 n.7. Similarly, the Board mischaracterizes the challenged language as Amazon granting itself "unfettered" discretion to make exceptions. Dkt. 26 at 19-20. As an initial matter, the language itself contains no such broad pronouncement, and instead states only that exceptions may be granted "when deemed appropriate." R. 328. Moreover, any requirement that an employer must explicitly identify every single possible reason for exceptions to an off duty access prohibition would be completely impractical. The reasons why

an exception to such a policy may be made without creating discrimination under the Act are as numerous and varied as the many reasons for access that have no relationship to Section 7 activities. Any list that purported to encompass all such reasons would necessarily be several pages long, and still could not account for unforeseen circumstances. Nothing in the Act suggests that employers must tailor their work rules in such absurd ways, simply so the Board could not imagine any scenario in which a rule could hypothetically be applied discriminatorily.[2]

Consequently, the Board's acknowledgment that some exceptions are permissible highlights the reality that its finding of a violation is based on pure speculation. Just as easily as it assumed Amazon would use discretion to discriminate against Section 7 activities, it could have assumed that Amazon

---

[2] In explaining its view that a reservation of discretion is unacceptable, the Board cites only three cases of its own precedent, as well as one distinguishable Sixth Circuit case. Dkt. 26 at 14-16 (citing *Piedmont Gardens*, 360 NLRB at 813; *S. Bakeries, LLC*, 368 NLRB No. 59 (2019); *Lytton Rancheria of Cal.*, 361 NLRB 1350, 1353 (2014); *NLRB v. Ohio Masonic Home*, 892 F.2d 449, 453 (6th Cir. 1989). None of these cases is binding precedent in the Court.

Moreover, in *Ohio Masonic Home*, the challenged rule did not include a generalized reservation of discretion at all. Instead, the Sixth Circuit faulted the challenged rule for a provision prohibiting access for "publicly hostile or adverse confrontations[.]" *Id*. The Sixth Circuit thus referenced discretion not as an overall matter, but instead found that particular language insufficiently tailored to the asserted business justification of maintaining residents' "serene atmosphere[.]" *Id*. That case, focusing on the "publicly hostile or adverse confrontations" phrase that could easily be read to encompass Section 7 activities, differs substantially from the language at issue here, which states that exceptions may be granted where "deemed appropriate." R. 328.

would apply the policy lawfully. Given that dichotomy, where the issue is one of reserved discretion, the most appropriate approach would be to find the law violated only where that discretion results in *actual* discrimination or where the reservation of rights delineates exceptions for activity that is similar to Section 7 activity but not exceptions for Section 7 activity itself.

After all, Section 8(a)(1) of the Act prohibits actions that "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed by [Section 7 of the Act]"). 29 U.S.C. § 158(a)(1). The Board cannot show that its own speculation about how discretion may be misused interferes with, restrains, or coerces employees in those activities. Its apparent approach that some exceptions are acceptable, but only if they are all specifically listed in the policy, thus enjoys no support in the language of the Act.

## V.    An admission of wrongdoing is not required for effective repudiation.

The Board's arguments about repudiation of purportedly unlawful conduct erroneously insert a requirement that the employer admit wrongdoing to employees. Dkt. 26 at 26 ("[r]ather than admit to wrongdoing as required . . .").[3]

---

[3] Once again, the Board advances a specious contention that Amazon has waived an argument. It argues in cursory fashion that Amazon's opening brief "largely sidesteps the Board's rationale for finding its repudiation effort fell short." Dkt. 26 at 27 (citing *NLRB v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 516 n.13 (7th Cir. 1991).) To the contrary, far from sidestepping anything, Amazon's opening brief devotes substantial argument to its position that Amazon effectively repudiated the challenged language. Dkt. 21 at 37-39 (Section IV of Brief entitled, "Amazon Cured Any Alleged Violation of the Act.").

No such requirement exists under the Board's own repudiation standard articulated in *Passavant Mem'l Area Hosp.*, 237 NLRB 138 (1978). Instead, that case only requires that the repudiation be "timely," "unambiguous," "specific in nature to the coercive conduct," and "free from other proscribed illegal conduct." *Id*. at 138 (internal quotations omitted). Moreover, as the Board has previously held, the *Passavant* standard is not to be applied in a "'highly technical and mechanical manner' and voluntary remedial action by employers 'should be encouraged.'" *ExxonMobil Research and Engineering Co.*, 372 NLRB No. 138, slip op. at 12 (2023) (internal quotations omitted).

Accordingly, the Board has previously held that "employers are not required to explain why they are repudiating an unlawful act." *TBC Corp.*, 367 NLRB No. 18, slip op. at 3 (2018) (finding successful repudiation of an otherwise unlawful solicitation policy). No basis exists to hold Amazon to a different standard in this case, and the Board's brief identifies no such distinction. The absence of an admission of wrongdoing requirement under prior Board cases is important because the Board can administer the Act evenhandedly only if it makes

---

This direct and specific argument stands in contrast to the case the Board cites in support of its waiver assertion. In *P*I*E Nationwide*, the Court found an argument that an employee's activity was not protected under the Act (in addition to not being concerted, as previously argued) had been waived because it was flatly not addressed either before the Board or in that employer's opening brief. Nothing about the waiver in *P*I*E Nationwide* resembles Amazon's consistent advancement of its repudiation arguments in this case.

decisions consistent with its own precedent, as the Courts of Appeals have routinely reminded it. *See Randell Warehouse of Arizona, Inc. v. NLRB*, 252 F.3d 445, 448 (D.C. Cir. 2001) ("We have repeatedly told the Board that silent departure from precedent will not survive judicial scrutiny.") (internal quotations omitted) (citing *Cleveland Constr. Inc. v. NLRB*, 44 F.3d 1010, 1016 (D.C. Cir. 1995); *Gilbert v. NLRB*, 56 F.3d 1438, 1445 (D.C. Cir. 1995) ("It is . . . elementary that an agency must conform to its prior decisions or explain the reason for its departure from such precedent."), *cert. denied*, 516 U.S. 1171 (1996)); *Good Samaritan Med. Ctr. v. NLRB*, 858 F.3d 617, 640 (1st Cir. 2017) (observing that "the NLRB cannot depart from its own precedent unless it articulates reasons for the departure") (citing *Shaw's Supermarkets, Inc. v. NLRB*, 884 F.2d 34, 36-37 (1st Cir. 1989)); *NLRB v. Magna Corp.*, 734 F.2d 1057, 1058 (5th Cir. 1984) (concluding, under pre-*Loper Bright* principles, that "the Board abused its discretion when it failed to follow its own precedent").

Amazon's July 8, 2022 repudiation closely resembles actions the Board found sufficient in other cases. The Board wrongly describes Amazon as only completing the "simple act of publishing a revised rule." Dkt. 26 at 29. In fact, Amazon not only published the revised rule a mere eight days after the challenged language appeared, but it also distributed a message to all employees that notified them of the removal, explained why the revision had occurred, and

explicitly assured employees of non-discrimination against protected activities.
R. 301, 304 ¶ 13.

Specifically, Amazon's notification to all employees clearly stated that the
challenged language had been "inadvertently included" and had thus been
"removed." *Id*. at 301, 304 ¶ 13, 328. The communication then went on to assure
employees of their rights under the Act by stating that the Off Duty Access
Policy "will not be enforced discriminatorily against employees engaged in
protected activity." *Id*. Similarly, in *ExxonMobil*, the Board found effective a
repudiation that characterized prior direct dealing conduct as a "mistake" and
then went on to note Board standards for direct dealing. 372 NLRB No. 138, slip
op. at 12. Again, the Board provides no reason why Amazon should receive
different treatment than that applied to other employers.

Against this background, the Board asserts that only a Board notice could
undo the effects of the challenged language, and in so doing, overstates the
nature of its own notices. It describes Board notices as providing "notice to
employees that the employer violated their rights but will refrain from doing so
in the future." Dkt. 26 at 25. However, in addition to the fact that the Board's
*Passavant* standard includes no such requirements, Board notices do not say that
the employer violated their rights. To the contrary, such notices only: (1)
summarize employees' rights under the Act; (2) state "WE WILL NOT" engage
in the activities challenged as unlawful; and, if applicable, (3) assure that "WE

WILL" complete specified affirmative remedial actions. (*See, e.g.*, R. 331-32

(notice imposed by the Board's decision in this case).)

The Board attempts to minimize Amazon's repudiation by describing its

assurance about non-discriminatory treatment as merely an "ambiguous

assurance." Dkt. 26 at 27. In reality, there is nothing ambiguous about the phrase,

"this policy will not be enforced discriminatorily against employees engaging in

protected activity." R. 328. And, other than admitting wrongdoing, the Board

identifies nothing more Amazon could have done to repudiate the challenged

language. Neither *Passavant* nor the Board's subsequent decisions applying that

standard impose any such requirement. As a result, Amazon effectively

repudiated the challenged language through its July 8, 2022 communication to

employees, and the Board has presented no valid reason to find otherwise.

## VI.    Public policy factors are relevant considerations in the Court's application of law to factual circumstances.

In response to Amazon's argument that the de minimis circumstances of this

case do not justify expenditure of the NLRB's scarce resources on policy grounds,

Dkt. 21 at 39-41, the Board incorrectly claims Amazon "cites no authority" in

support of its assertions. Dkt. 26 at 29.[4] In fact, as Amazon pointed out in its

---

[4] The Board advances yet another unsupportable waiver claim regarding this argument, stating, "Having failed to challenge the Board's reasoning that the policy had more than a de minimis effect on employee rights, Amazon has waived any such claim and may not raise it in a reply brief." *Id*. To the contrary, Amazon argued this point extensively in its opening brief, and indeed it is precisely that argument to which the

opening brief, both the Supreme Court and this Court have considered public policy implications in their interpretations of the Act. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33–34 (1937); *NLRB v. Winnebago Television Corp.*, 75 F.3d 1208, 1214 (7th Cir. 1996). And the District of Columbia Circuit has repeatedly criticized the Board for devoting its resources (and the court's) to matters of little import. *See, e.g., Stern Produce Co., Inc. v. NLRB*, 97 F.4th 1, 5 (D.C. Cir. 2024) ("[T]he law does not concern itself with trifles. Or should not."); *Dallas Mailers Union, Loc. No. 143 v. NLRB*, 445 F.2d 730, 732-33 (D.C. Cir. 1971) ("At a time when this court is confronted with an all-time high in caseload and backlog, it is most unfortunate that three of its judges must conscientiously spend the necessary time to do justice to a dispute that should have been settled long ago."). Consequently, the Court can and should consider the public policy implications of the Board's wasteful pursuit of this case.

Further, in support of its position that its allegation is somehow more than a de minimis issue, the Board claims that without a notice posting "employees would be left to acting at their peril because they would not be certain that the rules had no application." Dkt. 26 at 30 (quoting *NLRB v. Gen. Thermodynamics, Inc.*, 670 F.2d 719, 722 (7th Cir. 1982)). This argument ignores the facts of the case.

Board responded. Dkt. 21 at 10, 12-13, 39-41; Dkt. 26 at 29-31. It is inconsistent, at best, for the Board to assert on one hand that Amazon did not raise an argument, while simultaneously responding to that same argument on the other.

Amazon's July 8, 2022 notice to all employees included a link to the correctly displayed policy while unequivocally stating that the challenged language was "inadvertently included" and had been removed. R. 282-83 ¶ 4, 301. Moreover, that message included the statement, "this policy will not be enforced discriminatorily against employees engaging in protected activity." *Id*.

In light of that unambiguous communication, no basis exists to believe employees "would not be certain that the [inadvertently displayed language] had no application." *General Thermodynamics*, 670 F.2d at 722. By contrast, in the case the Board relies on, there was "no evidence that respondent made any effort to inform employees of th[e] rescission." *Id*. at 721 (internal quotations omitted). The same cannot be said of Amazon's comprehensive and clearly worded communication to employees in this case.

The fact that the Amazon already (over two years ago) removed the challenged language, and notified employees of both that action and their rights under the Act, further highlights the Board's improvident public policy in pursuit of this case. The remedy it seeks would accomplish no more than Amazon has already done. Its approach is therefore unjustifiably wasteful and should not be countenanced by the Court.

## <u>CONCLUSION</u>

For all the foregoing reasons, the circumstances presented here do not establish a violation of Section 8(a)(1) of the Act. Amazon's petition for review

should be granted, and the NLRB's cross-application for enforcement should be denied.

Respectfully submitted,

*s/Brian Stolzenbach*

**Dated:  October 25, 2024**

## CERTIFICATE OF COMPLIANCE WITH FRAP RULES 32(a)(7) AND 32(g) AND CIRCUIT RULE 32(c)

The undersigned, counsel of record for Petitioner/Cross-Respondent Amazon.com Services LLC, hereby certifies that this brief conforms to the rules contained in FRAP Rule 32(a)(7) and 32(g), and Circuit Rule 32(c). This brief was prepared in 12-point Book Antiqua font in the body and 11-point Book Antiqua font in the footnotes and was prepared using Microsoft Word.  The referenced word processing system indicates a total word count of 6,157, beginning at page "1," as authorized and determined under FRAP Rule 32(a)(7)(B).

### PROOF OF SERVICE

The undersigned, counsel for Amazon.com Services LLC, hereby certifies that on October 25, 2024, an electronic copy of this brief was served by ECF on the following counsel of record for the National Labor Relations Board:

Jennifer Abruzzo
Ruth E. Burdick
Ms. Usha Dheenan
David Habenstreit
Gregoire Sauter
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570-0001

**Dated:  October 25, 2024**

*s/Harrison C. Kuntz*